**DUBUQUE POLICEMEN'S PROTEC-
TIVE ASSOCIATION and Thom-
as J. Fessler, Appellants,**

v.

**CITY OF DUBUQUE, Iowa, Appellee.**

No.   95–1144.

Supreme Court of Iowa.

Sept. 18, 1996.

Stephen J. Juergens and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellants.

Barry A. Lindahl, Dubuque, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, TERNUS, and SCHULTZ,* JJ.

HARRIS, Justice.

■ A police officer and his association brought this declaratory judgment action claiming the officer should have been allowed sick leave for a day when he undertook—and recovered from—a stress test. It is clear that work-related absences resulting from job-related physical incapacitation qualify for sick leave. It is also clear that work absences to undergo a physical examination, even for job-related conditions, do not qualify. We understand the question here to be whether sick leave is appropriate when a temporary incapacitation immediately resulted from a physical examination that was undertaken because of a job-related physical condition. We think the officer was entitled to sick leave, not because he submitted to an examination, but because his temporary incapacitation under the circumstances was actually due to his job-related physical condition.

Controlling facts are not disputed. Plaintiff Thomas Fessler is a police officer for defendant City of Dubuque and a member of the plaintiff Dubuque Policemen's Protective Association (the association).[1] The city and the association have a collective bargaining agreement.

On a weekend in April 1993 Fessler entered a hospital with chest pains and was discharged later the same day. He did not miss any work because he was not on duty that weekend. Fessler's pain continued, and he sought additional treatment. Pursuant to a doctor's order he returned to the hospital on July 6 for a thallium stress test. Because the doctor ordered him not to, Fessler did not return to work that day following the test. Although the city had no objection to his absence from work for the test, Fessler was charged with one day of sick leave.

The test results were abnormal so Fessler was referred to a heart specialist. The spe-

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1995).

1. The association is an unincorporated employee organization as defined by Iowa Code § 20.3(4) (1993), and is the certified bargaining agent for the city's police officers.

cialist ordered Fessler to report to the hospital again for additional testing. After an exploratory surgical procedure revealed a blockage in one of the heart vessels (diagnosed as ischemic heart disease), Fessler's physician performed angioplasty to correct the problem. As a result of the surgery Fessler missed a Friday and Monday (July 16 and 19) of work. The city charged him two more days of sick leave for these absences.

No absences were charged to undertake further tests, all of which were normal. Fessler's request that the city reinstate the three days of sick leave was denied.

Fessler and the association then filed this petition for declaratory judgment seeking to establish his rights under Iowa Code section 411.6(5) (1993) (accidental disability benefits). The trial court thought the case turned on a distinction between diagnostic and corrective procedures. It found the doctor's direction not to return to work following the first thallium test was in order to recover from the testing procedure itself, not because of his heart condition. The court stated the statute "only allows for the restoration of pay and allowances for incapacity resulting from heart disease."

The court held Fessler was entitled under section 411.6(5) to restoration of two days of sick leave previously charged to him as a result of his incapacity from the angioplasty performed on July 16, but not for the day he undertook the first stress test. The court noted that an issue concerning Fessler's rights under the collective bargaining agreement (discussed later) was not made a part of the action and declined to order the city to restore the two days of sick leave.

Fessler and the association appealed, the city cross-appealed, and we certified the appeal pursuant to Iowa rule of appellate procedure 3 (amount in controversy). The action was tried at law, so our review is on error. Iowa R.App.P. 4. State laws creating employee benefits are liberally construed to promote the legislature's purpose and objective. *See Carstensen v. Board of Trustees,* 253 N.W.2d 560, 564 (Iowa 1977).

**I.** Fessler's entitlement to sick leave for the day he undertook diagnostic testing is controlled by Iowa Code section 411.6(5)(b). It provides in material part:

If a member ... becomes incapacitated for duty as a natural or proximate result of ... disease incurred in or aggravated by the actual performance of duty ... the member, upon being found to be temporarily incapacitated following a medical examination as directed by the city, is entitled to receive the member's full pay and allowances from the city's general fund....

Section 411.6(5)(c) explains:

Disease under this section shall mean heart disease ... and shall be presumed to have been contracted while on active duty as a result of strain....

Therefore, to be entitled to full pay and allowances on July 6, Fessler must demonstrate: (1) he became incapacitated for duty as a natural or proximate result of heart disease; (2) his heart disease was incurred or aggravated by the performance of duty; and (3) he was found temporarily incapacitated following a medical examination as directed by the city.

The only factor at issue here is the first: whether Fessler's temporary incapacity due to diagnostic testing on July 6 was the natural or proximate result of his heart disease.[2] Although not defined in the statute, the words "natural" and "proximately" are familiar and well understood in tort law. We borrow from the tort definition in interpreting Iowa Code chapter 411. *City of Cedar Rapids v. Municipal Fire & Police Retirement Sys.,* 526 N.W.2d 284, 288 (Iowa 1995). "Natural" refers to consequences which are normal and neither extraordinary nor surprising in light of everyday experience. *See*

---

**2.** The unrebutted presumption created by § 411.6(5)(c) disposes of the second factor. Regarding the third factor, the trial court noted the city knew in advance of Fessler's examinations and made no objection. Under these circumstances the court was satisfied the treatment qualified as being "directed by the city." In addition the court concluded Fessler was rendered temporarily incapacitated (on the basis of his doctor's orders) to perform his duties as a police officer on the three days in question. The city does not challenge these findings.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 43, at 282 (5th ed. 1984). Proximate cause has been defined this way:

> The conduct of a party is a proximate cause of damage when it is a substantial factor in producing damage and when the damage would not have happened except for the conduct.
>
> "Substantial" means the party's conduct has such an effect in producing damage as to lead a reasonable person to regard it as a cause.

1 Iowa Civ. Jury Instructions 700.3 (1994).[3]

■ Fessler is thus entitled to receive the day's sick leave if: (1) heart disease was a substantial factor in producing his temporary incapacity; (2) his temporary incapacity would not have occurred except for the heart disease; and (3) his temporary incapacity was a normal consequence of heart disease. Fessler experienced chest pains. Chest pains are a symptom of heart disease, so Fessler's physician ordered diagnostic testing. Such testing requires a brief recuperation period, and Fessler's doctor ordered him not to return to work for the remainder of the day on which the test was performed. Under these circumstances heart disease plainly was a substantial factor in bringing about Fessler's temporary incapacity. Thus he meets the first factor.

The district court determined that Fessler's temporary incapacity would have occurred without regard to whether he actually had heart disease. The trial court seized on this determination when it concluded Fessler was not entitled to sick leave restoration for the day of his first stress test.

■ The stress test cannot be viewed as the origin of the incapacity for the day in question. If Fessler had not had heart disease the symptoms of the disease would not have manifested themselves, the doctor would not have ordered diagnostic testing, and Fessler would not have become temporarily incapacitated. If the trial court's distinction were carried to its logical conclusion, an officer would not be entitled to accidental disability benefits during the recovery period following by-pass surgery because such a temporary incapacity would have to be viewed as the result of the corrective surgery rather than the natural or proximate result of the heart disease itself. We do not suggest that routine diagnostic tests for heart diseases are covered under Iowa Code chapter 411. Pay and allowances are appropriate only if a job-related heart disease is ultimately diagnosed and if a temporary incapacity occurs. We think Fessler qualifies under this test.

■ The record before us is insufficient to justify an order that Fessler is entitled to reinstatement of the three days. As the city points out, section 411.6 does not provide for any specific pay or allowances. Rather such allowances are controlled by the collective bargaining agreement between the parties. We have mentioned that the trial court did not address any rights under the collective bargaining agreement. We do conclude that Fessler was temporarily incapacitated on July 6, 16, and 19 within the meaning of section 411.6(5) and was thus entitled to "full pay and allowances," whatever they may be.

■ II. In refusing to decide how the parties' collective bargaining agreement affected Fessler's Iowa Code chapter 411 rights, the court noted that no such relief was expressly sought in Fessler's petition. In supporting the trial court's refusal, the city appears to confuse two legal concepts, the first of which involves the nature of declaratory judgments. As the name suggests, declaratory judgment is an action in which a court declares the rights, duties, status, or other legal relationships of the parties. *See* Iowa R.Civ.P. 261. Declaratory judgments are res judicata and binding on the parties. *Id.* "The distinctive characteristic of a declaratory judgment is that the declaration stands by itself, that is, no executory process follows as of course. In other words such a judgment does not involve executory or coercive relief." 22A Am.Jur.2d *Declaratory Judgments* § 1, at 670 (1988).

---

**3.** The parties have not challenged the definition of proximate cause we adopted in *City of Cedar Rapids*, 526 N.W.2d at 288. *But see Gerst v. Marshall*, 549 N.W.2d 810, 815–17 (Iowa 1996).

The second concept concerns the submission of evidence in declaratory proceedings. The rules of procedure which apply in ordinary actions also apply in declaratory judgments. *Id.* § 83, at 827 (declaratory judgments do not abrogate the general rules of pleading and evidence). Although it was not raised as a defense in the answer, the city presented testimony at trial showing it was common practice under the collective bargaining agreement to charge sick leave in similar situations. The city also offered, and the court received, a copy of the agreement into evidence. Only relevant evidence is admissible. Iowa R.Evid. 402. The effect of the agreement on the parties' rights under section 411.6(5) must be deemed a material and probative issue to the controversy. In general, "the purpose of the declaratory judgment is to resolve uncertainties and controversies before obligations are repudiated, rights are invaded, or wrongs are committed." 22A Am.Jur.2d *Declaratory Judgments* § 1, at 670. Under the principles of notice pleading, Fessler was entitled to a decision on how the collective bargaining agreement affected his rights under Iowa Code chapter 411.

Because we have no interpretation to review for error, the case must be remanded in order to decide the effect of the collective bargaining agreement on the parties' rights under Iowa Code section 411.6(5) and for further proceedings consistent with this opinion.

**REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**