Stephen FOX, Maurine K. Fox, Richard Black, Shirley Brown, Maurine Coe, John Hunt, Richard Johnson, and Harold Wilson, Appellants,

Dawn Nelson, Max Gene Bowman, Robin Burkhalter, Phyllis Schnackel, Glen Youngblood, and Larry White, Petitioners,

v.

POLK COUNTY BOARD OF SUPERVISORS, POLK COUNTY, IOWA, and Polk County Board Of Adjustment, Appellees,

City of Des Moines, Iowa,
Intervenor–Appellee.

No. 96–1041.

Supreme Court of Iowa.

Oct. 22, 1997.

G. Mark Rice of Adams & Rice, P.L.C., Des Moines, for appellants.

David W. Hibbard, Assistant County Attorney, for appellees.

Roger K. Brown, Assistant City Attorney, for intervenor–appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

The Polk County Board of Supervisors (Board of Supervisors) amended its land use plan, zoning ordinance, and zoning map. The Polk County Board of Adjustment (Board of Adjustment) then granted a conditional use permit to the City of Des Moines (City). These actions allow the City to construct a softball complex on an eighty-acre tract of land in unincorporated Polk County.

Residents of Polk County filed petitions for writ of certiorari and declaratory judgment challenging the legality of the rezoning by the Board of Supervisors and the issuance of a conditional use permit by the Board of Adjustment. The district court dismissed the petitions for declaratory judgment prior to hearing and denied the petitions for writ of certiorari following hearing. On appeal, we affirm in part, reverse in part, and remand.

I. *Background Facts and Proceedings.*

In 1990, the citizens of Des Moines passed a referendum allowing funds to be appropriated for renovating City swimming pools and for acquiring and developing new soccer fields and softball diamonds. The City cooperated with the softball community to determine how to make the best use of the funds allocated for the new softball diamonds. In 1993, a search committee was established to find an acceptable site for an eight-diamond softball complex and park. The committee consisted of members of the City administration, park administration, and softball organizations. The committee located several possible sites and, in 1994, recommended the City pursue voluntary acquisition of an eighty-acre tract outside the City limits owned by Edward and Eleanor Ochylski. The City discussed with the owners its desire to acquire the property and the Ochylskis donated the eighty-acre tract (Ochylski property) to the City.

Polk County (County) adopted a new Comprehensive Land Use Plan (the Plan) and a new zoning ordinance in 1990. The Plan was developed to assist in defining the County's planning goals and objectives for a spacial distribution of land use in unincorporated areas of the County and to accommodate County development patterns to the year 2001. The Ochylski property was located in an area zoned as a suburban estate (SE) district. This district is intended to provide for one-acre suburban estate lots. The district is intended to be served by septic systems and supplied with public water. The County's zoning staff determined the City's request was for an outdoor commercial amusement use and that the SE zoning classification of the Ochylski property did not permit construction of the proposed softball complex. On November 21, 1994, the City adopted a resolution calling for the city manager to request the Ochylski property be rezoned from SE district to Countryside (CS) district and that the Plan and zoning map be amended to reflect the change. The CS district is viewed as a holding zone. It serves as both a transition district between farmlands and more suburban areas and to provide for limited development opportunities. The CS classification allows the Board of Adjustment to issue a conditional use permit for construction of the softball complex.

Public notice of the application was published and the application to amend the Plan and zoning map came before the Polk County Zoning Commission (Commission) on January 23, 1995. Information presented by the City in support of its application included the following: the area around the Ochylski property is predominately agricultural, with

some acreages and farmsteads fronting onto N.E. 46th Street; the site is in plain view of Interstate 80 and relocated Highway 65, both of which are major four-lane divided highways; approximately 10,000 adults and 2,500 children in the greater Des Moines area play in softball leagues operated by the Des Moines Parks and Recreation Department; and construction of a new softball facility would allow all area softball players a safe and convenient site for games.

Construction of the new softball complex is expected to have a positive economic impact on the local economy. The facility is expected to attract state and regional tournaments which will bring out-of-city players who will patronize local hotels, restaurants, and shops. In addition, the project is supported by the Ankeny Area Chamber of Commerce, the Ankeny Economic Development Corporation, the Pleasant Hill Chamber of Commerce, the cities of Pleasant Hill and Altoona, the Greater East Side Development Board, and the Altoona Area Chamber of Commerce.

Some residents living in the area around the Ochylski property (hereinafter collectively referred to as Objectors) oppose the location and construction of the proposed softball complex. Arguments against the facility presented by the Objectors included: increased traffic on roads too narrow to support it; safety concerns arising from lack of shoulders or sidewalks along the roads; increased traffic congestion; increased noise from traffic and crowds; lighted softball fields illuminating a residential area at night; alcohol consumption at the complex and associated problems; increased litter in the area; increased crime; questions over police and fire protection; and a decline in property values.

By a vote of five to two, the Commission recommended that the Board of Supervisors deny the City's application to rezone the Ochylski property. Thereafter, the City's application was presented to the Board of Supervisors. Three public hearings were held discussing the City's application. Parties on both sides of the issue appeared before the Board of Supervisors. After each hearing, the Board of Supervisors voted four to one (with one abstention) to grant the rezoning and amend the Plan and zoning map. The changes became effective March 14, 1995.

The Board of Supervisors conditioned its approval on the City addressing the concerns of the Objectors. The City agreed to the following conditions: (1) conduct an analysis of N.E. 46th Street and the intersection at N.E. 46th Avenue (Broadway), and to pay for any improvements necessary to accommodate the complex; (2) to use the best commercial technology available for directional lighting to reduce the amount of light in the residential neighborhoods, place the lighted fields at the rear of the complex and furthest away from existing residences and limit the time when lights may be used; (3) limit the hours a public address system can be used and its decibel level; (4) construct sanitary and water lines to the site prior to its use; (5) construct another entrance to the complex within one year of construction of a new street; (6) give notice to the County of tournaments to allow the coordination of emergency and police services; and (7) provide at its cost dust control measures for N.E. 54th Avenue if deemed necessary by the County engineer.

The Objectors filed a petition for a writ of certiorari (Count I) and for declaratory judgment (Count II) against the Board of Supervisors on April 11. Count I of the petition alleged the Board of Supervisors acted illegally in granting the City's application to rezone the Ochylski property. Count II alleged the Board of Supervisors' action constituted illegal spot zoning and deprived the Objectors of their property without due process and just compensation. The County filed an answer denying the allegations. The City intervened in the action as a defendant and adopted the County's answer.

The City applied to the Board of Adjustment for a conditional use permit so it could begin construction of the complex. The Board of Adjustment considered the matter on July 17. As at previous hearings, the Objectors voiced their concerns about the project. The Board of Adjustment granted the application for a conditional use permit. Thereafter, the Objectors amended their petition to seek review of the Board of Adjustment's decision. The

amended petition included Counts III and IV. Count III requested a writ of certiorari be issued because the granting of the conditional use permit was illegal. Count IV requested a declaratory judgment holding the conditional use permit was void.

The Objectors filed a motion to extend time to designate expert witness on September 28. The district court granted the extension. The Boards and the City claimed they had no notice of the motion to extend time and filed a resistance seeking to have the extension nullified. Their response to the extension also contained an objection to the designation of the expert witnesses, an allegation that declaratory judgment was not available to the Objectors because they had another complete remedy available to them, and a motion to prohibit the presentation of additional evidence. A hearing was held on the motion on November 28, and on January 29, 1996, the court issued a ruling. The court refused to prohibit the presentation of expert witness testimony. In its ruling on the motions, the court dismissed the declaratory judgment counts against the Board of Supervisors and the Board of Adjustment finding the Objectors had an adequate remedy through their certiorari action. Following entry of the ruling, the court heard testimony on the remaining counts.

On May 7, the district court entered judgment for the Board of Adjustment and the Board of Supervisors and denied the Objectors' petitions for writ of certiorari. The Objectors appealed the court's decision.

II. *Scope of Review.*

■ This appeal challenges both the legality of the Board of Supervisors' amendment of the zoning ordinance and the Plan, and the Board of Adjustment's issuance of a conditional use permit. The nature of the certiorari proceedings against the Board of Supervisors is an ordinary action. Iowa R. Civ. P. 317. The certiorari action against the Board of Adjustment is specifically authorized under Iowa Code section 335.18 (1995). By statute, the hearing before the district court in such a proceeding is heard de novo. *Id.* § 335.21. The statutory provision for trial of a certiorari action against a county board

of adjustment is identical to the statutory provision for trial of a certiorari action against a city board of adjustment. *See id.* § 414.18. In our review of this language, we have stated:

> In a certiorari proceeding in a zoning case the district court finds the facts anew on the record made in the certiorari proceeding. That record will include the return to the writ and any additional evidence which may have been offered by the parties. *However, the district court is not free to decide the case anew.* Illegality of the challenged board action is established by reason of the court's findings of fact if they do not provide substantial support for the board decision. *If the district court's findings of fact leave the reasonableness of the board's action open to a fair difference of opinion, the court may not substitute its decision for that of the board.*

*Helmke v. Board of Adjustment, City of Ruthven,* 418 N.W.2d 346, 347 (Iowa 1988) (citation omitted).

■ Under Iowa Rule of Civil Procedure 318, our scope of review on appeal from a district court's judgment in a certiorari proceeding is "governed by the rules applicable to appeals in ordinary actions." We are limited to correction of errors at law and we are bound by the findings of the trial court if supported by substantial evidence in the record. Iowa R.App. P. 14(f)(1); *Helmke,* 418 N.W.2d at 348.

■ Our review of the court's dismissal of the declaratory judgment claims is for correction of errors. Iowa R.App. P. 4.

III. *Dismissal of the Declaratory Judgment Actions.*

■ The Objectors appeal the trial court's dismissal of their declaratory judgment claims against the Boards. A declaratory judgment is an action in which a court declares the rights, duties, status or other legal relationships of the parties. Iowa R. Civ. P. 261; *Dubuque Policemen's Protective Ass'n v. City of Dubuque,* 553 N.W.2d 603, 606 (Iowa 1996). Courts have discretion to not render a declaratory judgment "where it would not, if rendered, terminate the uncer-

tainty or controversy giving rise to the proceeding." Iowa R. Civ. P. 265. Under our declaratory judgment rules "any person ... whose rights, status, or other legal relations are affected by ... any municipal ordinance ... may ... obtain a declaration of rights, status or legal relations thereunder." Iowa R. Civ. P. 262.

The trial court found:

The petitioners have an adequate remedy through the certiorari action which makes declaratory judgment inappropriate. The purpose of petitioners wanting to pursue the declaratory judgment claims was to present the testimony of their expert witness, Dr. Kelly. Since they were permitted to present such expert testimony under Count I and III, there is no reason to consider the declaratory judgment claims under Count II and IV and they were dismissed.

█ A declaratory judgment action is appropriate to test the legality of an amendment to a city's comprehensive zoning ordinance. *Keller v. City of Council Bluffs*, 246 Iowa 202, 206, 66 N.W.2d 113, 115 (1954). The existence of another remedy which will afford complete relief does not preclude a judgment for declaratory relief in cases where it is appropriate; the test is whether the legislature has prescribed an exclusive remedy. *Rich Mfg. Co. v. Petty*, 241 Iowa 840, 847, 42 N.W.2d 80, 84 (1950). We have stated:

The discretion to grant or refuse declaratory relief is broad in nature, and should be liberally exercised to effectuate the purpose of the statute,.... This discretion may be exercised only at such time during the trial when the court has the evidence before it and can properly make such a final determination, and can be exercised only on the record as it exists when the entry of a judgment would be appropriate. Such discretion should not be exercised on motion to dismiss ... unless the court is fully satisfied that on its allegations the bill must be dismissed after a hearing on the merits....

*Wright v. Thompson*, 254 Iowa 342, 350, 117 N.W.2d 520, 525 (1962).

█ Although certiorari is an appropriate means to review a board of supervisors' zoning decision, *see City of Grimes v. Polk County Board of Supervisors*, 495 N.W.2d 751, 752 (Iowa 1993), it is not an exclusive remedy. We agree the legality of the Boards' action was addressed by the trial court in the certiorari actions. Although both the certiorari and declaratory judgment actions raise the legality issue, the declaratory judgment petition against the Board of Supervisors also requested the court declare the rezoning constituted a public taking of property without just compensation. The court should have allowed evidence on the taking issue before dismissing or ruling on the declaratory judgment petition. We find the trial court committed error when it dismissed the declaratory judgment actions before hearing evidence.

### IV. Denial of Writ of Certiorari Against the Board of Supervisors.

█ The Objectors claim the trial court erred in denying the writ of certiorari against the Board of Supervisors. They allege the action of the Board of Supervisors in granting the rezoning and the amending of the Plan and zoning map was arbitrary, capricious, illegal, erroneous, an abuse of discretion, and contrary to law. The trial court found the Board of Supervisors could reasonably find the rezoning to allow development of the proposed softball park would preserve a large area of open green space, serve as a transitional district to separate and buffer planned residential areas from planned commercial areas, and provide park facilities to the area. If the validity of the rezoning ordinance is fairly debatable, it must be allowed to stand. *See Neuzil v. City of Iowa City*, 451 N.W.2d 159, 163 (Iowa 1990).

█ The Objectors urge the rezoning of the Ochylski property constituted illegal spot zoning. "Spot zoning results when a zoning ordinance creates a small island of property with restrictions on its use different from those imposed on the surrounding property." *Kane v. City Council of Cedar Rapids*, 537 N.W.2d 718, 723 (Iowa 1995). Spot zoning is not necessarily illegal. *Montgomery v. Bremer County Bd. of Supervisors*, 299

N.W.2d 687, 696 (Iowa 1980). We have held "there must be substantial and reasonable grounds or basis for the discrimination when one lot or tract is singled out in an amendatory ordinance removing therefrom restrictions imposed upon the remaining portions of the same zoning district." *Keppy v. Ehlers,* 253 Iowa 1021, 1023, 115 N.W.2d 198, 200 (1962).

■ Spot zoning will be allowed:

If it is germane to an object within the police power and there is a reasonable basis to treat the spot-zoned property differently from the surrounding property, the spot zoning is valid.

In determining whether there is a reasonable basis for spot zoning, we consider the size of the spot zoned, the uses of the surrounding property, the changing conditions of the area, the use to which the subject property has been put and its suitability and adaptability for various uses.

*Kane,* 537 N.W.2d at 723.

■ The trial court found the rezoning did not constitute spot zoning. There was substantial evidence in the record on which the court could base its decision. The surrounding property to the immediate north, south and west of the Ochylski property is zoned for suburban use but is used as agricultural land. The land to the east of the Ochylski property is zoned light business. The light business zoning permits commercial and light industrial use. The changing conditions of the area included the reconstruction of Highway 65 and the new interchange at Hubbell Avenue one-half mile east of the site. We find the trial court could conclude there was a reasonable basis for the rezoning of the Ochylski property.

### V. *Denial of Writ of Certiorari Against the Board of Adjustment.*

The Objectors allege the issuance of a conditional use permit by the Board of Adjustment was arbitrary, capricious, illegal, erroneous, an abuse of discretion and contrary to law. The Board of Adjustment had authority to rule on a request for conditional use permits. Iowa Code §§ 335.10, .15. Before issuing a conditional use permit, Polk County ordinances require the Board of Adjustment to check the proposed use against an extensive list of criteria. The Board of Adjustment considered the criteria and found the conditional use permit should be allowed.

The Objectors argue the Board of Adjustment did not carefully consider the criteria. In support of its argument they called an expert witness to explain how the Board's analysis was faulty. The trial court did not give much credence to the expert's opinion. It specifically found "his opinion should be given little if any weight." We find there was substantial evidence to support the court's decision.

### VI. *Disposition.*

The Objectors have failed to establish that, as a matter of law, either the Board of Supervisors or the Board of Adjustment acted illegally. We affirm the ruling of the district court denying the Objectors' petitions for writ of certiorari and the dismissal of Count IV against the Board of Adjustment. Although it was error to dismiss either petition for declaratory judgment prior to hearing evidence, we find nothing remains of Count IV. All the claims made in Count IV were decided in the certiorari action against the Board of Adjustment. We therefore decline to remand the declaratory judgment claim against the Board of Adjustment. We reverse the trial court's dismissal of Count II. On remand, it will be for the court to decide whether or not the rezoning of the City property constitutes a taking of private property for public use without just compensation.[1] We do not intimate what that decision should be.

Costs of the appeal are taxed eighty percent against appellants and twenty percent against the appellees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

1. *See Shriver v. City of Okoboji,* 567 N.W.2d 397, 404 (Iowa 1997); *Hunziker v. State,* 519 N.W.2d 367, 369–70 (Iowa 1994).