**DUBUQUE POLICEMEN'S PROTECTIVE ASSOCIATION and Thomas J. Fessler, Appellees,**

v.

**CITY OF DUBUQUE, Iowa, Appellant.**

**No. 97–694.**

Supreme Court of Iowa.

July 29, 1998.

Barry A. Lindahl, Dubuque, for appellant.

Stephen J. Juergens of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellees.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This is a second appeal involving these parties and the application of Iowa Code chapter 411 that establishes a retirement system for police officers and fire fighters. The case includes an analysis of the provisions of the collective bargaining agreement between the City of Dubuque and the Dubuque Policemen's Protective Association. The specific issue at hand is whether the City rightfully charged police officer Thomas Fessler with three days sick leave when he was absent from work due to a heart condition illness. The district court ruled that sick leave could not be deducted and charged against officer Fessler for this condition. We affirm.

## I. Background Facts and Proceedings

Plaintiff Thomas Fessler is a police officer for defendant City of Dubuque and a member of the plaintiff Dubuque Policemen's Protective Association (the Association). The City and the Association have a collective bargaining agreement.

In April 1993 Fessler entered a hospital with chest pains and was discharged later the same day. He did not miss any work because he was not on duty that weekend. Fessler's pain continued, and he sought additional treatment. Pursuant to a doctor's order, he returned to the hospital on July 6 for a thallium stress test. Because the doctor ordered him not to, Fessler did not return to work that day following the test. Although the City had no objection to his absence from work for the test, Fessler was charged with one day of sick leave.

The test results were abnormal so Fessler was referred to a heart specialist. The specialist sent Fessler to the hospital for additional testing. After an exploratory surgical procedure revealed a blockage in one of the heart vessels (diagnosed as ischemic heart disease), Fessler's physician performed angioplasty to correct the problem. As a result of the surgery, Fessler missed a Friday and Monday of work, July 16 and 19. The City charged him two more days of sick leave for these absences.

No absences were charged to undertake further tests, all of which were normal. Fessler's request that the City reinstate the three days of sick leave was denied.

Fessler and the Association then filed a petition for declaratory judgment seeking to establish his rights under Iowa Code section 411.6(5) (1993) (accidental disability benefits). The trial court thought the case turned on a distinction between diagnostic and corrective procedures. It found the doctor's direction not to return to work following the first thallium test was in order to recover from the testing procedure itself, not because of his heart condition. The court stated the statute "only allows for the restoration of pay and allowances for incapacity resulting from heart disease."

The court held Fessler was entitled under section 411.6(5) to restoration of two days of sick leave previously charged to him as a result of his incapacity from the angioplasty performed on July 16, but not for the day he undertook the first stress test. The court noted that an issue concerning Fessler's rights under the collective bargaining agreement was not made a part of the action and

for this reason declined to order the City to restore the two days of sick leave.

On appeal, our court ruled that "Fessler was temporarily incapacitated on July 6, 16, and 19 within the meaning of section 411.6(5) and was thus entitled to 'full pay and allowances,' whatever they may be." *Dubuque Policemen's Protective Ass'n v. City of Dubuque*, 553 N.W.2d 603, 606 (Iowa 1996) [hereinafter *Dubuque I* ].

We noted in *Dubuque I* that in the first trial, although the City did not raise it as a defense, it presented testimony that it was common practice under the collective bargaining agreement to charge sick leave in similar situations. Also, a copy of the collective bargaining agreement was received in evidence. The effect of the collective bargaining agreement on the parties' rights under section 411.6(5), however, was not determined by the trial court. For this reason, we remanded the case for further findings by the trial court.

On remand, the district court made factual determinations, reviewed the effect of the collective bargaining agreement, and decided that officer Fessler was entitled to reinstatement of three days of sick leave for the days of July 6, 16, and 19, 1993. The court held that the collective bargaining agreement as it existed in 1993 entitled bargaining unit members time away from employment for disease or injury incurred in the actual performance of duty without having such absence charged against sick leave. Heart disease by statutory presumption arises in the performance of duty. Iowa Code § 411.6(5)(c).

## II. Issues and Scope of Review

On second appeal, the City contends that the trial court erred in incorporating the presumption under Iowa Code section 411.6(5)(c) that heart disease is contracted during the performance of duty into the parties' collective bargaining agreement. The action was tried at law, so our review is on error. Iowa R.App. P. 4.

## III. Analysis

At the remand hearing, the district court took evidence and made the following findings on March 20, 1997.

The Supreme Court's decision declares that Officer Fessler was temporarily incapacitated on July 6th, 16th and 19th within the meaning of Iowa Code Section 411.6(5). Because of the application of such code section, Officer Fessler was entitled to "full pay and allowances" for these three days. However, Section 411.6 does not define what Officer Fessler's "full pay and allowances" are. Rather, the collective bargaining agreement defines Officer Fessler's pay and allowances. The Supreme Court remanded the issue to the trial court for an additional hearing to determine what Officer Fessler's specific pay and allowances are under the collective bargaining agreement and to enter such further findings as may be appropriate under the circumstances.

At the evidentiary hearing on remand it was established that no collective bargaining agreement existed prior to 1975. In the 1975 agreement the contract stated that the City would provide group health insurance benefits to police officers. No mention is made of sick leave.

A new collective bargaining agreement was reached in 1977. Article VIII of that agreement concerns sick leave. It provides that bargaining unit members will accrue one day of sick leave each month. It goes on to define the maximum sick leave that can be accumulated, how charges against sick leave are made, treatment of sick leave upon separation from employment and other matters. The contract language does not address when charges would be made against sick leave nor does it define the phrase "sick leave" or the words "injury" and "illness." All these terms appear in the article. The contract makes no reference to Chapter 411 within the context of defining sick leave or defining more generally "pay and allowances." A reference is made to Chapter 411 concerning the treatment of sick leave upon retirement. It is not a provision that bears on the present controversy.

The collective bargaining agreement has been renegotiated almost annually since its

inception. The language concerning sick leave has remained substantially in its original form from the 1977 contract until the present time. Changes have been made in rates of accrual, et cetera, but language concerning when sick leave would be charged or not charged has never been added. In addition, definitions of "sick leave," "injury" and "illness" have never been added.

The City and the bargaining unit have both been aware of the existence of Section 411.6 of the Iowa Code throughout their history of negotiating the collective bargaining agreement. The wording of the collective bargaining agreement has always been crafted to recognize the interplay between the agreement and the Code. In addition, a well-defined and consistent practice arising out of the combined interpretation of Section 411.6 and the collective bargaining agreement has existed since 1975.

At the time of Officer Fessler's absence and previously to at least 1977 the practice (referred to in this opinion as 'the practice') was that when a bargaining unit member is injured in the course of performing his or her official duties, the officer's time away from duty for treatment and recovery is not charged against sick leave. On the other hand, when an officer suffers from a condition which cannot be determined with reasonable certainty as arising while on duty (such as the flu or the cold), the officer's time away for treatment and recovery is charged against sick leave. The first alternative results in no reduction of an officer's accumulated sick leave; the second alternative does.

Specific examples of the first alternative include an incident when Officer Fessler was injured in an automobile accident while driving a squad car on duty. On that occasion, Officer Fessler's time away from work for treatment and recovery was treated as regular employment and not charged against sick leave. Another officer, Eric Schneider, entered a burning-and-smoke-filled building while on duty and suffered a lung infection as a direct result of the incident. The officer's time away from employment for treatment and recov-ery was not charged against sick leave but treated as regular employment.

There is no provision of the contract which specifically preserves to either party rights or practices which existed under prior contracts. Each of the bargaining unit contracts has been negotiated in the context of the parties mutual interpretation of chapter 411 and the practice regarding sick leave. The practice has remained uniform since 1975 and the contract language concerning sick leave has remained largely unchanged throughout that same period.

The City began the practice of not charging an officer for time away from the job as a result of injuries sustained while on duty because it believed that result was compelled by Chapter 411. In light of the City's view and because it appeared to be consistent with the language of the chapter, the bargaining unit also adopted this interpretation. The language is found in Section 411.6(5)(b). It reads, "If a member in service ... becomes incapacitated for duty as a natural or proximate result of an injury or disease incurred in ... performance of duty at some definite time or place ... the member ... is entitled to ... full pay and allowances ..." Because the parties regarded the practice as being required by the statute it wasn't defined in the bargaining agreement.

The record discloses that some conflicting testimony was received regarding the past practices of charging an officer with sick leave arising from an illness. The district court resolved these conflicts by its findings which we find supported by substantial evidence. Our review is not de novo but is based on an examination to determine if there is substantial evidence to support those findings. *Bahnsen v. Rabe,* 276 N.W.2d 413, 415 (Iowa 1979); *Farmers Ins. Group v. Merryweather,* 214 N.W.2d 184, 186 (Iowa 1974); *PEB Practice Sales, Inc. v. Wright,* 473 N.W.2d 624, 626 (Iowa App.1991).

The district court found that the collective bargaining agreement is silent as to whether the City can charge an officer with sick leave for absence due to an illness resulting from a

heart condition. The court further found that the parties intended to omit language addressing this matter from the collective bargaining agreement, believing it unnecessary because Iowa Code section 411.6(5)(c) established that sick leave was not chargeable for this condition. Since the 1977 collective bargaining agreement was negotiated no changes have been made that address this question. The court found that both parties assumed for over twenty years that the established practice of not charging an officer with sick leave for a heart condition illness would be followed. We believe that this practice is precisely what is required by section 411.6(5)(b) and (c).

We hold that under the provisions of Iowa Code section 411.6(5)(b) and (c), if a member in service or the chief of police or fire department becomes incapacitated as a result of injury to the heart or illness from heart disease he or she is entitled to receive full pay and allowances for the period of incapacity, which means that no charge can be made against the member's sick leave. Because subparagraph (c) provides a statutory presumption that the heart disease was contracted while on active duty, the actual contracting source of the disease, whether on active duty or not, has no bearing on this matter.[1] Nor do the provisions of any collective bargaining agreement except to define as a factual matter what benefits are included in the terminology "full pay and allowances." In the instant case, we hold that this phrase dictates that no charge against officer Fessler's sick leave may be made as a result of his absence from work due to illness occasioned by heart disease.

The judgment of the district court is affirmed.

**AFFIRMED.**

---

1. A statutory exception exists and applies to a person whose membership in the retirement system commenced on or after July 1, 1992, and whose heart or lung disease would not exist but for a medical condition that was known to exist when the person's membership commenced. Iowa Code § 411.6(5)(c).