# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2880SI

_____

| | | |
|---|---|---|
| Iowa Coal Mining Co., Inc., | * | |
| Star Coal Company, Inc., and | * | |
| James Huyser, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | On Appeal from the United |
| | * | States District Court |
| Monroe County, Iowa; Juanita L. | * | for the Southern District |
| Murphy; Monroe County Board | * | of Iowa. |
| of Adjustment; Arthur W. Sims, | * | |
| Member; Natalie Lathrop, Member; | * | |
| Joseph E. Pearson, Member; Robert | * | |
| Lee Putnam, Member; and William | * | |
| H. Yates, Member, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 12, 2001

Filed: July 23, 2001

_____

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit
Judges, and MONTGOMERY,[1] District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

_____

[1]The Hon. Ann D. Montgomery, United States District Judge for the District of
Minnesota, sitting by designation.

These consolidated cases involve a mining concern's efforts to combine a strip mine and a solid-waste landfill on property it leased in Monroe County, Iowa. The County opposed the landfilling operation and enacted zoning ordinances to prohibit this use of the property. The parties litigated their dispute in the state courts for over ten years, resulting in two decisions by the Iowa Supreme Court. Thereafter, the County denied the mining concern's application for a certificate permitting landfilling as an existing nonconforming use. In the actions underlying this appeal, the mining concern claimed that the County's conduct violated its due-process and equal-protection rights, constituted a taking without just compensation, and was illegal under state law. The District Court[2] entered summary judgment in favor of the County, and this appeal followed. We affirm.

I.

Iowa Coal Mining Co., its wholly owned subsidiary, Star Mining Co., and its sole shareholder, Jim Huyser (collectively referred to as Iowa Coal) leased several sites in Monroe County for coal strip-mining. Two of these sites, designated as Star 6 (120 acres) and Star 14 (340 acres), were located in an A-2 district, a classification which allowed both mining and landfilling as conditional uses.

In the mid-1980's, the decline of the price of coal and the rise in operation costs made strip mining at these sites less and less economically feasible. Iowa Coal determined that it could increase profitability by combining strip-mining and landfilling at the same site. When these two operations are synchronized, special strip-mining techniques are used to create the space for the landfill. These techniques are more expensive than traditional methods of strip mining and are undertaken with the

---

[2]The Hon. Charles R. Wolle, United States District Judge for the Southern District of Iowa.

anticipation that the additional costs would be more than offset by the profits from the landfill.

In 1984, Iowa Coal obtained a landfill permit from the Iowa Department of Natural Resources (DNR) for 10.3 acres of Star 6 and began using this site as a landfill on a limited basis in conjunction with the strip mine. In 1987, Iowa Coal hired an engineering firm to design and develop a plan for the operation of a large landfill at Star 14. When County officials learned of this plan, they made it clear that they were opposed to locating a landfill at Star 14. Iowa Coal, however, continued with its plans and expended significant time and money to prepare its request for a landfill permit from the DNR. For example, water wells were drilled to monitor the groundwater. Iowa Coal also expended resources to market its planned Star 14 landfill to potential users.

Meanwhile, the County began developing a county-wide zoning ordinance that would prohibit landfilling in an A-2 district. In January 1988, Iowa Coal submitted its request to the DNR for the Star 14 landfill permit. The County was able to delay issuance of the Star 14 landfilling permit by various contacts with the DNR. On May 12, 1988, one day before Iowa Coal obtained the permit from the DNR, the County enacted its new comprehensive zoning ordinance, Ordinance No. 6, which did not allow landfilling in an A-2 district. The ordinance did allow existing nonconforming uses to continue, so long as they remained "otherwise lawful" and were not enlarged, moved to any part of the land not occupied by the use on the effective date of the ordinance, or abandoned for a period of six months. Ordinance No. 6, § 9 B.1-3.

Iowa Coal applied for rezoning to accommodate its planned landfill and mining operations at both sites. The County Board of Supervisors denied the request and Iowa Coal filed a state-court action against the County for certiorari review and declaratory

judgment, under Iowa Code § 335.18,[3] claiming that Ordinance No. 6 was illegal and deprived Iowa Coal of the only legitimate use of its property without providing just compensation, and seeking damages. It is undisputed that no coal was ever removed from, and no waste was ever deposited at, Star 14. The Court concluded that the County exceeded its statutory authority in enacting Ordinance No. 6, and, following a lengthy trial on damages, awarded Iowa Coal over $18 million for lost profits and royalties. The Court did not address Iowa Coal's takings claims.

The Iowa Supreme Court reversed this decision. The Court first held that Ordinance No. 6 was validly enacted. The Court next addressed the takings claims and held with regard to Star 14, that the County did not "substantially deprive" Iowa Coal of the use and enjoyment of this site because strip mining was still permitted there. The Court reasoned as follows:

> Iowa Coal's initial investment in Star 14 was not for the purpose of developing a solid waste disposal site. Thus the majority of its resources were already invested in expectation of strip mining. In fact, Iowa Coal's own proof suggests that its capital investment in any landfill operation would be minimized because of the similarity in equipment and essential personnel involved in both industries. See Stone, 331 N.W. 2d at 404 (where no material is placed on site and no construction work begun, plaintiff's efforts and expenditures prior to rezoning not so substantial as to create vested right in particular land use). It also appears that the cost expended in planning and promoting this proposed landfill project

---

[3]This section provides as follows:

Any person . . . aggrieved by any decision of the board of adjustment . . . may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality.

The court's review is by certiorari. Iowa Code §335.19 (2001).

paralleled, rather than predated, the county's action, further weakening Iowa Coal's claim.

Iowa Coal Mining Co. v. Monroe County, 494 N.W.2d 664, 671 (Iowa) (Iowa Coal I), cert. denied, 508 U.S. 940 (1993). Thus, the Court concluded, there was no taking of Star 14 upon which to base a damages award. The Court determined that Iowa Coal's takings claim with regard to Star 6 failed for a different reason — it was not ripe for adjudication because Iowa Coal had not exhausted administrative remedies by attempting to take advantage of the existing-nonconforming-use provision of Ordinance No. 6. Id. at 671-72.

On May 7, 1993, Iowa Coal filed another action against the County in the state court. It sought declaratory judgment that Iowa Coal possessed nonconforming-use rights for strip mining and landfilling at both Star 6 and Star 14, and that the sections of Ordinance No. 6 and its materially identical successor, Ordinance No. 7, prohibiting landfilling on these sites, were unconstitutional because they were arbitrary and unreasonable. The complaint asked the Court to state what actions were necessary to make the Star 6 takings claim ripe for adjudication. Iowa Coal also asserted a claim for tortious interference with a contract between Iowa Coal and a waste operator for deposit of waste material at Star 6.

The trial court again ruled in Iowa Coal's favor. It held that the Star 6 takings claim was ripe because the ordinances provided no administrative remedy for establishing a nonconforming use. Alternatively, the Court held that if the ordinance could be read to provide an administrative remedy, the remedy was "fruitless and inadequate." The Court also held that at the time the County adopted the ordinances, mining and landfilling were existing nonconforming uses at both sites, that these uses had not expired, and that adoption of the ordinances constituted a regulatory taking of

Star 6.  The Court awarded Iowa Coal approximately $3 million for a taking of Star 6 and $850,000 on the business-interference claim.

Once again, the Iowa Supreme Court reversed.  The Court read the ordinances as providing the following administrative remedy for establishing an existing nonconforming use.  Before land can be used for any purpose, including a nonconforming one, the zoning administrator must issue a zoning certificate stating that the use complies with the ordinance.  The landowner must file a written application with the zoning administrator for the certificate.  If the zoning administrator refuses to grant the certificate, the landowner may appeal to the five-member board of adjustment created by the ordinance.  Finally, Iowa Code §§ 335.18-25 allow a party aggrieved by a decision of the board of adjustment to seek judicial relief by means of a petition for certiorari.  If the courts overturn a decision denying the certificate and thereby establish the use, the exhaustion requirement would be met and a takings or inverse-condemnation claim could be brought.  Iowa Coal Mining Co. v. Monroe County, 555 N.W. 2d 418, 435-36 (1996) (Iowa Coal II).

The state Supreme Court rejected the holding that this remedy was fruitless.  "[A]ny bias or preconceived disposition the County may have had against Iowa Coal did not relieve Iowa Coal of the requirement to pursue the zoning certificate remedy."  Id. at 436.  Thus, the Court determined, Iowa Coal's takings claims were premature, and the trial court lacked jurisdiction to hear them.  The Supreme Court accordingly remanded for dismissal of Iowa Coal's takings claim regarding Star 6 and its nonconforming-use claim for Star 6 and Star 14.

The Court also ruled that its decision in Iowa Coal I did not preclude Iowa Coal's claim that the nonconforming use of landfilling existed at Star 14, as well as at Star 6, at the time the ordinances were passed.  The Court noted that the relevant evidence on the nonconforming-use claim would be whether Iowa Coal "was landfilling" at the sites

at the time the County adopted the ordinances, and did not discontinue this use for the time prescribed in the ordinances. Id. at 444.

Lastly, the Iowa Supreme Court affirmed the award of $850,000 to Iowa Coal on the business-interference claim, holding that the evidence supported the finding "that the County was bent on stopping all landfilling operations on the two sites, even if that meant driving Iowa Coal out of business," and that interference with the contract in question "was just one part of this overall scheme." Id. at 440.

In response to this decision, Iowa Coal filed applications for nonconforming- use certificates for Star 6 and Star 14 on March 5, 1997, and May 23, 1997, respectively. The application for Star 6 was granted on July 23, 1997. Thereafter, the zoning administrator hired a private law firm for advice on how to handle the Star 14 application. While Iowa Coal repeatedly requested a ruling on the Star 14 application, which it claimed was as complete as the Star 6 application, the law firm recommended that procedures "be put in place" to give the zoning administrator "every opportunity to fully investigate matters pertaining to the application" and that a full hearing be scheduled with a court reporter present. Iowa Coal opposed these suggestions, claiming the zoning administrator was stalling in hopes of delaying the decision long enough to bankrupt Iowa Coal.

II.

This brings us to the two actions underlying this appeal. On August 20, 1998, when the Star 14 application had been pending for over 15 months, Iowa Coal filed an action in the District Court against the County, the zoning administrator in her individual and official capacities, the board of adjustment, and the board's members in their individual and official capacities. In Count I, brought under 42 U.S.C. § 1983, Iowa Coal claimed that the delay in ruling on the Star 14 application for a nonconforming-use certificate was unreasonable and violated Iowa Coal's due-process

rights.  Three counts were brought under state law for tortious interference with a contract with a party wanting to use Star 14 as a waste-deposit site.  Lastly the complaint sought declaratory judgment that the defendants' inaction amounted to a taking of the Star 14 site.

On October 31, 1998, while this action was pending, the zoning administrator denied Iowa Coal's application for a nonconforming-use certificate for Star 14.  The administrator held that no evidence established that the funds expended by Iowa Coal at Star 14 prior to May 13, 1998 (the date the DNR issued the Star 14 landfill permit), were not "preliminary" or in connection with obtaining the permit, as opposed to for "performing work of a substantial nature that actually changed the land or actually operating or using the Star 14 site for combined coal mining and landfilling, or for landfilling or coal mining."

Iowa Coal appealed the decision to the board of adjustment, and a hearing was set.  Iowa Coal was informed that trial-type procedures would be followed at the hearing.  Mr. Huyser appeared and made a formal statement objecting to the proposed format for the hearing.  He stated  that such procedures were not authorized by the ordinances, and had never been applied to any other zoning decision by the board.  Furthermore, Mr. Huyser complained, it was unfair for the County to be both the only party opposing issuance of the certificate and the decision-maker on Iowa Coal's application.  Mr. Huyser argued that the zoning administrator's October 1998 decision was a sham, as the information submitted by Iowa Coal to support its application was not reviewed.

Two boxes of documents were introduced into evidence as Exhibits A and B on Iowa Coal's behalf.  The County then introduced into evidence numerous documents, and the hearing was concluded.  On January 4, 1999, the board denied Iowa Coal's appeal by adopting verbatim the extensive proposed findings of fact and conclusions of law submitted by the zoning administrator, including the finding that "the evidence

submitted by Iowa Coal did not establish that any use was made of the 'Star 14 Site' for combination coal mining and landfilling or landfilling," or that any such use was lawful, prior to the issuance of the permit from the IDNR one day after Ordinance No. 6 was enacted.

Iowa Coal then filed its second action in the District Court. Counts I - III were brought under 42 U.S.C. § 1983, claiming that both the 19-month delay in ruling on the Star 14 application and the ultimate denial of the certificate were arbitrary and for a malicious purpose, in violation of Iowa Coal's due-process and equal-protection rights, and constituted an unconstitutional taking without just compensation. Count IV was a claim under Iowa Code § 335.18 for certiorari review of the board's decision denying the certificate. Iowa Coal's two actions were consolidated, and the County moved for summary judgment on all claims.

## III.

The District Court granted the County's motion for summary judgment. The Court first considered the certiorari claim challenging the decision of the board of adjustment to deny the use certificate for Star 14. The District Court held that both the zoning administrator and the board of adjustment properly analyzed Iowa Coal's application under the guidelines set forth in Iowa Coal II. The Court concluded that the holding that there was no evidence presented that Iowa Coal was "landfilling" on the dates in question was "well-grounded" in light of the evidence that no waste was ever deposited at Star 14.

The District Court then turned to Iowa Coal's other claims and held as follows:

Plaintiffs essentially abandoned their constitutional and tort claims by choosing not to present evidence at the hearing before the Board. Whether this is deemed abandonment, failure to exhaust remedies, or

estoppel by issue and claim preclusion, this court holds that the Board's decision forecloses plaintiffs from pursuing their constitutional and tort claims against the Board and its members.

In support of this conclusion, the Court cited several cases holding that a state administrative decision may have later preclusive effect in a federal court. The Court went on to hold that Iowa Coal's due-process claim failed because the zoning decision was not "truly irrational," and that the equal-protection claim failed because the record did not support a conclusion that Iowa Coal was treated differently from other similarly-situated property owners, if there were any.

IV.

On appeal, Iowa Coal argues that the County defendants' motion for summary judgment in the certiorari proceeding was not properly supported, and that the District Court erred in applying a deferential standard of review to the board's decision, as opposed to the traditional summary-judgment standard. On the merits of the certiorari issue, Iowa Coal argues that the board and District Court erred in applying an "actual use" standard to determine whether Iowa Coal had a vested right to landfill at Star 14. The correct standard, Iowa Coal argues, is a "substantial expenditures" test, and the evidence establishes that Iowa Coal met this test. Iowa Coal also argues that the board's decision does not preclude its federal claims, and that the District Court erred granting summary judgment on those claims.

The County's main argument for affirmance is that there is no evidence in the record that Iowa Coal "was landfilling" at Star 14 before the ordinances were adopted. The County argues that the focus should be on whether actual landfilling took place on the site. The County also argues that the board of adjustment's findings have preclusive effect on the nonconforming-use issue as well as on the federal constitutional issues.

-10-

## V.

We cannot agree that the board's decision precludes any of Iowa Coal's claims. Judicial review of the board's decision is an integral part of the administrative remedy itself, and is provided for by Iowa Code § 335.18. Nor do we believe that any claims have been abandoned. We review de novo the District Court's application of state law, predicting how the highest court in the forum state would resolve the issues. Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000). We also review a grant of summary judgment de novo and apply the same standard as applied by the District Court. Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

## A.

We first consider the certiorari claim challenging the legality of the board of adjustment's decision. Iowa Code § 335.21 provides that the hearing before the court in such a proceeding shall be de novo. The Iowa Supreme Court has interpreted this language as follows:

> In a certiorari proceeding in a zoning case the district court finds the facts anew on the record made in the certiorari proceeding. That record will include the return to the writ and any additional evidence which may have been offered by the parties. However, the district court is not free to decide the case anew. Illegality of the challenged board action is established by reason of the court's findings of fact if they do not provide substantial support for the board's decision. If the district court's findings of fact leave the reasonableness of the board's action open to a fair difference of opinion, the court may not substitute its decision for that of the board.

Fox v. Polk County Board of Supervisors, Polk County, Iowa, 569 N.W.2d 503, 506 (Iowa 1997) (emphasis omitted) (citation omitted); see also Ackman v. Board of Adjustment for Black Hawk County, 596 N.W.2d 96, 100 (Iowa 1999); Quality Refrigerated Servs., Inc. v. City of Spencer, 586 N.W.2d 202, 207 (Iowa 1998) ("[z]oning decisions are entitled to a strong presumption of validity").

We believe that the Iowa Supreme Court would reach the same decision as did the District Court here — that the board's action in denying an existing nonconforming-use certificate for landfilling at Star 14 was reasonable. As the parties recognize, the key issue is whether Iowa Coal's activities at Star 14 prior to the effective date of Ordinance No. 6 gave it a vested right in the previous zoning classification. In Stone v. City of Wilton, 331 N.W. 2d 398 (Iowa 1983), the Iowa Supreme Court explained that the standard for determining whether a party has acquired such a right is a flexible one. "It depends on the type of the project, its location, ultimate cost, and principally the amount accomplished under conformity. Each case must be decided on its own merits, taking these elements into consideration." Id. at 403 (quoted case omitted). Here, the Iowa II opinion itself sets forth the rule of decision: was Iowa Coal landfilling before the disputed ordinance took effect? The answer is indisputably no. Iowa Coal and the County were engaged in a battle of time, with Iowa Coal trying to get a landfill permit and begin depositing waste at Star 14 before the County rezoned A-2 districts, and the County trying to get the rezoning enacted before Iowa Coal established the site as a landfill. We simply cannot say that it was unreasonable for the board to find that Iowa Coal lost this race.

### B.

We agree with the District Court that summary judgment was appropriate on Iowa Coal's § 1983 claims. The fact that the ordinances deprived Iowa Coal of the most beneficial use of the property it leased does not render the rezoning an unconstitutional taking. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365

(1926) (75% diminution in value caused by zoning law did not constitute a taking); Scott v. City of Sioux City, Iowa, 736 F.2d 1207, 1217 (8th Cir. 1984), cert. denied, 471 U.S. 1003 (1985) (zoning ordinance which limited commercial development on certain land and thereby diminished land's value did not effect a taking).

The actions of the County or its officials were not "truly irrational," the level of conduct necessary to support a substantive-due-process claim in this context. See WMX Tech., Inc. v. Gasconade County, Mo., 105 F.3d 1195, 1199 n.4 (8th Cir. 1997); Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992). While there may be cases where land-use decisions are "so corrupted by the personal motives of local government officials that due process rights are implicated," Bituminous Materials, Inc. v. Rice County, Minn., 126 F.3d 1068, 1071 (8th Cir. 1997), this is not such a case. There is no evidence that the zoning officials here were motivated by any consideration other than the public welfare. Iowa Coal has also not shown that it was treated differently from other similarly situated landfill operators in an A-2 district. Thus its equal protection claim fails. See id. at 1071-72.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.