624 A.2d 699

Patrick SCHOEPPLE, Appellant,

v.

LOWER SAUCON TOWNSHIP ZONING HEARING
BOARD and Floyd J. Smith, Inc.

FLOYD J. SMITH, INC., Appellant,

v.

LOWER SAUCON TOWNSHIP ZONING HEARING BOARD.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 27, 1992.

Decided April 8, 1993.

George J. Daniel, for appellant Patrick Schoepple.

Donald B. Corriere, for appellant/intervenor, Floyd J. Smith, Inc.

George A. Heitczman, for appellee.

Before CRAIG, President Judge, PELLEGRINI, Judge, and BLATT, Senior Judge.

CRAIG, President Judge.

In these consolidated appeals, landowner Floyd J. Smith appeals an order of the Court of Common Pleas of Northampton County that affirmed a decision of the Zoning Hearing Board of Lower Saucon Township denying the landowner's application for a variance to allow erection of two duplex dwellings. In the related appeal, objector Patrick Schoepple appeals an order of the same trial court that affirmed a decision of the board determining that the township's zoning officer properly issued building permits to the landowner to construct single-family dwellings.

### Appeal at No. 1037 C.D. 1992

The facts, as found by the zoning hearing board, are as follows. The landowner has title to several tracts of land constituting a large subdivision known as University Heights, which was recorded in 1912. That subdivision is illustrated in Appendix A attached to this opinion. The lots at issue in this

appeal are identified in Appendix A by a heavy black outline in the westernmost area, at the top of the page. The specific lots at issue in this appeal are indicated on Appendix B as lots 1, 2, 6 and 7.

When the landowner acquired the property on May 2, 1986, the area in which the land is located was zoned R–7.5, which required a minimum lot size of 7,500 square feet. On February 10, 1988, the township adopted a new zoning ordinance that reclassified as R12 the area in which the landowner's property is located. The new provision, section 804 of the ordinance, requires a minimum area of 12,000 square feet *per lot,* i.e., per principal use—not per family.

As the trial court noted in its opinion, the township notified the landowner at some time before December 1990 that the township was considering condemning part of the landowner's property for an easement to construct a sewer line. The landowner ultimately entered into an agreement with the township and executed a deed of easement, relating to the cross-hatched area on Appendix B. In the course of negotiating the easement, the township, through its solicitor, indicated to the landowner that it would regard his property as consisting of legal nonconforming lots in relation to the ordinance enacted in 1988.

On December 17, 1990, the landowner filed an application for a variance with the board, seeking to permit him to build two duplex residences on his property. He proposed to build one duplex on combined lots 1 and 2, which total approximately 17,000 square feet in area and to build a second duplex on combined lots 6 and 7, which total nearly 19,000 square feet in area. Appendix B shows the location of those lots. The board interpreted the present zoning ordinance as permitting the construction of duplexes only as part of a "cluster development" and thus as requiring a minimum parcel size of ten acres, as required for such clusters in an R–12 district. Based on that interpretation, the board denied the landowner's request and the landowner appealed that decision to the trial court.

In his appeal to the trial court, the landowner argued that he was entitled to build duplexes on his property, as of right, because the ordinance permits that use and, contrary to the township's interpretation, does not require duplexes to be developed under the ordinance provisions for cluster development. The landowner also argued that the board erred in denying him a variance because the easement on lot 1 and a steep slope on lot 7 decreased the building areas on those lots to such a degree as to create a hardship. The trial court (1) concluded that the landowner had not raised the issue of whether he is entitled as a matter of right to build duplexes and deemed that issue waived and (2) affirmed the board's denial of the variances, concluding that no hardship exists, based on the board's finding that the landowner could develop the four individual lots as single-family dwellings.

The trial court also indicated that the township had denied the landowner a building permit to construct a single-family dwelling on lot 1, because of the easement. However, the record only includes a letter from the township engineer indicating that, at the time the landowner and the township entered the easement agreement, the parties believed that the landowner would not be able to develop lot 1 because of the easement. The record in this case does not include any evidence regarding whether or not the landowner has submitted a permit application to build a single-family dwelling on the lot, and if so, whether the township denied the permit on the basis of the easement. The trial court, citing *Vanguard Cellular System v. Zoning Hearing Board of Smithfield Township*, 130 Pa.Commonwealth Ct. 371, 568 A.2d 703 (1989), concerning variance criteria, concluded that, because the easement "is based on an agreement being negotiated between the [landowner] and the township in lieu of a condemnation action," the easement "is not a hardship which was inflicted upon the land by the zoning ordinance," (slip opinion at pp. 10–11) and thus, the hardship is not one that warrants the granting of a variance.

In this appeal, the landowner raises the following issues: (1) whether the trial court erred in concluding that the landowner

had waived the issue of whether he is entitled to building permits for his proposed duplexes as a matter of right; (2) if the issue was not waived, whether the landowner is entitled as a matter of right to develop duplexes on his combined lots; and alternatively, (3) whether the board and trial court erred in concluding that the landowner is not entitled to a variance which would allow him to construct duplexes on his property.

### 1. Waiver of Issue

The landowner relies on Robert Ryan's treatise, *Pennsylvania Zoning Law and Practice*, § 9.5.11, for the proposition that a landowner can pursue a new legal theory in the trial court if no new evidence is required. He correctly notes that no new evidence is required to pursue in the trial court the question of whether he is entitled to a permit as a matter of right. More significantly, the board itself raised the permitted-as-of-right issue in its decision by resting that decision in part upon its interpretation that the ordinance requires a ten-acre cluster development as a base for permitting a duplex to be erected.

The landowner, in his notice of appeal to the trial court, did assert that the ten-acre minimum lot size requirement, relating to cluster developments, was not applicable to his request to construct his two duplexes because he was not seeking an increase in the density requirements of the ordinance. See Paragraph 10(c) of the Notice of Appeal.

Accordingly, this court will address the landowner's argument that he is entitled to construct duplexes as a matter of right without pursuing a ten-acre cluster development.

### 2. Duplexes as Permitted Uses in R–12 Districts?

### Without Cluster Development

Until September, 1989, Article 8 of the zoning ordinance, Section 801, provided for the following permitted "Residential" uses in R–12 districts as follows:

Duplex—(Section 1715)

Single Family Attached—Public Water & Sewer Required (Section 1715)

Planned Residential Development (Cluster)—Public Water & Sewer required. (Section 1715)

However, on September 25, 1989, an amendment to the ordinance became effective, which altered the wording of section 801 as indicated below:

Residential

Single Family Cluster Developments

(Section 1715)

Single Family Detached Cluster

Single Family Duplex

Single Family Attached

Mixes Residential Cluster .

Section 1715 of the ordinance, to which both the former and present versions of section 801 refer, is the section covering cluster developments. That reference in both versions of section 801 does *not* state that development of duplexes is *subject* to compliance with the ordinance provisions relating to cluster developments. It does *refer* to section 1715 where a cluster development is sought. It no longer refers to section 1715 with respect to duplexes as such.

As section 1715.01 states, the purpose of cluster develop-' ment is "to permit a high quality of lot layout, planning and landscaping design for single family residential subdivisions, in the R12 and UR Districts." Sections 1715.01(B) and (C)[1] make clear that cluster development is an *alternative* to the usual lot-by-lot development of residences, by noting that cluster development provides a developer with flexibility to construct dwellings, without any increase in *density* (families

1. Those sections provide as follows:
 B. Area and dimensional specifications per individual lot are reduced as a means for residential developers to improve the feasibility of creating attractive and useable open space, preserving desirable natural features, and providing attractive and practical designs in lot layout, street alignment and building orientation.
 C. The regulations shall not be used to permit a higher overall density than would be permitted using conventional minimum lot sizes.

per gross acre) but on a lot size smaller than one allowed for conventional development in order to provide more open space which could be useable for recreational or scenic purposes by all members of the community.

Thus, for example, in a cluster development, a developer may construct a duplex on 6,000 square feet of his property, section 1715.04, as compared to the conventional requirement under section 804 that its lot have a minimum of 12,000 square feet; however, on the entire tract, the landowner is not allowed to construct any greater number of dwellings than he would be able to construct under section 804. The net result is a development that devotes less total area to dwellings and their surrounding lots, thus permitting the remaining area to be used for open space or recreational functions.

In this case, the board accepted the landowner's evidence that, by combining lot 1 with lot 2 and lot 6 with lot 7, as indicated in Appendix B, the new combined lots would exceed 12,000 square feet, the minimum lot size requirement of section 804 per principal use, i.e., per duplex. As noted above, this is *not* stated as a minimum area per family. Hence, there are sufficient facts to support the legal conclusion that the landowner is entitled to build a duplex on each of his combined lots, without needing to pursue the requirements for the cluster development privilege. He is not seeking to pursue any cluster development. Without the cluster requirement, the proposed duplex construction complies with the ordinance. Accordingly, the trial court's decision must be reversed in the landowner's appeal.

Because of our determination that the landowner is therefore entitled to build duplexes on his combined lots as a matter of right, this court does not need to address the board's decision denying the landowner's request for variances.

### Appeal at No. 1023 C.D. 1992

In this appeal, objector Patrick Schoepple, who owns property near the lots the landowner is seeking to develop, appeals

the order of the Court of Common Pleas of Northampton County that affirmed a decision by the zoning hearing board holding that the landowner's property consists of legal nonconforming lots, allowing single-family dwellings on each because they antedated the present lot-area requirements for single-family houses.

The facts relevant to this appeal are as follows. On July 16, 1990, the township's zoning officer issued a building permit to the landowner to construct a single-family dwelling on the landowner's lot 5, as indicated in Appendix B at the end of this opinion. The objector did not appeal the zoning officer's action to the board until January 15, 1991. The zoning officer issued eight additional building permits to the landowner after the objector filed the appeal, but before the board held a hearing on the appeal. The permits apparently were for development of single-family dwellings on lots 2,3,4,6,7,8,9, and 10.[2] The parties agreed that the objector's appeal of the July 1990 permit issuance would also address his challenge to the other eight permits.

The board denied the objector's appeal, and the objector appealed that decision to the trial court, which affirmed the board. In this appeal, the objector raises the following issues: (1) whether an agreement between a township and landowner is binding where the agreement purports to classify property for zoning purposes, but has not been approved by a municipal council or zoning hearing board; (2) whether the landowner's property is properly classified as consisting of legal nonconforming lots where there are no natural boundaries between adjacent lots and the landowner does not notify others of his intent to maintain, preserve or establish the character of the lot; (3) whether the intent of a corporation's stockholder can

2. The record submitted to this court includes neither the permits for the other eight lots nor a complete map indicating where the additional lots are located. The record testimony is confusing, referring in some instances to the lot numbering in the landowner's exhibit and in other instances to the numbering of the lots in the objector's exhibit. The general location of the lots for which permits were issued is shown in Appendix A as the two westernmost areas outlined by the heavier black lines. These lots were also outlined in the Objector's Exhibit 4, but with the lots numbered differently.

be attributed to the corporation if there is no evidence that the stockholder is acting in an official capacity; (4) whether collateral estoppel applies when an issue was decided in an earlier action, but the party against whom the doctrine is asserted in the second action did not have notice that it would be raised in the first action; (5) whether the board erred in accepting the testimony of a land surveyor when there is evidence that contradicts that surveyor's opinion.

### 1. Timeliness of Objector's Appeal of Permit for Lot 5

The landowner argues that the objector's appeal of the zoning officer's issuance of the building permit for lot 5 was untimely. The landowner relies upon section 914.1 of the MPC, 53 P.S. § 10914.1, which provides that

[n]o person shall be allowed to file any proceeding with the board later than thirty (30) days after an application for development, preliminary or final, has been approved by an appropriate municipal officer ... *unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given.* (Emphasis added.)

The zoning officer issued the permit on July 6, 1990; however, the objector did not appeal the issuance until January 15, 1991. The landowner argues that the objector has not established that he did not have notice of the zoning officer's action, and cites the objector's testimony before the board as evidence of the objector's actual knowledge of the issuance of the permit.

In his brief, the landowner states that the objector cannot claim not to have been aware of the permit because "he could observe the construction 'right out his front door.'" This court has reviewed the testimony the landowner cited; however, the landowner has taken the objector's statement out of context as indicated below:

Q. Now, did you have an opportunity to observe this land during the last four years?

A. Sure.

Q. Okay.

A. Right out my front door.

Q. Did anything happen to the land, did Mr. Smith do anything to it, did he survey it, did he mark it out into separate lots, did he do anything at all to it?

A. Well, there were—there was surveying done for the entire parcel. There was surveying done.

Q. Did he put any markers, to your knowledge, to indicate where these proposed lots should be?

That testimony does *not* indicate that the objector saw construction being conducted on the property. There is testimony that suggests that the house had been constructed by the time of the February, 1991 hearing; however no testimony definitively indicates when construction occurred in the period between July of 1990 and January, 1991.

The trial court did not address the timeliness issue. The trial court indicated that the parties had stipulated that the issue would not be addressed at the board hearing. The notes of testimony do not specifically indicate that the landowner agreed not to raise the timeliness issue; however, the landowner did not raise it during the course of the hearing.

■ In *Seneca Mineral Company v. McKean Township Zoning Hearing Board,* 124 Pa.Commonwealth Ct. 389, 556 A.2d 496 (1989), this court cited former section 915 of the MPC, 53 P.S. § 10915, repealed by Act of December 21, 1988, P.L. 1329, and stated as follows:

> [A]n appeal from the decision of a zoning officer to approve an application for development must be filed within thirty days after such approval has been granted *unless the person seeking to appeal that decision alleges and proves that he had no notice, knowledge or reason to believe that such approval had been given.* 124 Pa.Commonwealth Ct. at 392, 556 A.2d at 497 (emphasis in original)

The legislature clearly placed the burden of proof upon objectors to establish when they received notice of a zoning officer's action, where they seek to pursue an untimely challenge to the action. The present appeal provision in the MPC, section 914.1, 53 P.S. § 10914.1, is essentially the same, re-

quiring that an objector who does not file an appeal from a zoning officer's approval within thirty days, must prove that he did not have actual notice.

In this case, the objector did not introduce any evidence at all of his lack of notice. Although the landowner has not persuaded this court that there is evidence supporting the objector's actual knowledge, there is also no evidence in the record that supports the objector's allegations that he did not know that the zoning officer had issued a building permit. As indicated above, the colloquy upon which the trial court relied does not in fact support its conclusion that the parties agreed that the specific question of timeliness was not an issue. Accordingly, this court concludes that the objector has not sustained his burden of proof with regard to his lack of knowledge of the permit approval, and therefore, any issues relating to the permit approval for lot 5, including the objector's assertion that the lot is not a legally nonconforming lot, have been waived.

This court also notes that the Pennsylvania Supreme Court's decision in *Highland Park Community Club v. Zoning Hearing Board of Adjustment,* 509 Pa. 605, 506 A.2d 887 (1986) does not negate the clear mandate of section 914.1 and former section 915, that the objector has the burden of proof as to the time he received notice of a zoning officer's action. The majority opinion drew a dissent from Mr. Justice Zappala, not because of any shift of that burden by the majority to the landowner, but because, in the view of the dissent, the alleged proof was not sufficient and not properly part of the record.

In conclusion, the objector failed timely to appeal the zoning officer's issuance of a building permit for lot 5; therefore he has waived any right to challenge the development approved under that permit. Accordingly, this court need not address the issues the objector has raised with regard to construction on that lot.

### 2. *Validity of Agreement Classifying Lots as Nonconforming*

This court disagrees with the trial court's conclusion that the township solicitor in this case was empowered to

enter into an agreement with the landowner regarding the classification of the landowner's property. Any such agreement would render meaningless the rights and procedures established under the MPC and municipal zoning ordinances. The MPC empowers municipalities to adopt zoning ordinances that ensure a logical and well-reasoned approach to land development. A zoning ordinance is municipal legislation and the MPC's procedural and remedial provisions safeguard the municipality, landowners and others within the municipality who have an interest in specific land development. If townships were allowed to enter such agreements, they could bypass the remedial provisions the MPC vests in objectors. Accordingly, this court holds that township solicitors are not empowered to enter agreements such as the one at issue in this case.

### 3. Collateral Estoppel

The objector also argues that the trial court erred in concluding that, even if the alleged agreement between the landowner and the township is not valid, the lots are legally nonconforming. The township argues that the doctrine of collateral estoppel bars the objector from raising this issue.

As indicated in our discussion of the landowner's appeal in case No. 1037 C.D. 1992, the only cause of action the landowner presented to the board in that case was whether or not the zoning officer improperly had denied the landowner variances to build two duplexes. The issues involved in granting a variance relate to whether or not a hardship exists, as well as to whether a variance is needed, i.e., whether a permitted use is involved. In short, in that appeal, the objector sought to prevent the landowner from developing duplexes on the landowner's property.

A review of the record in this case indicates that the objector did challenge the board's conclusion that the landowner's lots are legally nonconforming in the duplex proceedings before the board. The objector's notice of appeal to the trial court and his brief to the trial court specifically refer to the issue of whether the lots are legal nonconforming lots.

However, the objector did not pursue his challenge to the board's finding in an appeal from the trial court's decision in the landowner's duplex action to this court.

The landowner himself raised the collateral estoppel issue before the board in this case, the single-family dwelling permit case. That hearing occurred only two months after the hearing in the duplex matter. Despite the obvious notice to the objector that the landowner would seek to preclude relitigation of the nonconformance issue in the single-family dwelling permit appeal case, the landowner failed to pursue his argument in the landowner's duplex appeal.

■ Although courts have generally held that collateral estoppel will bar relitigation of an issue when the issue sought to be litigated is identical to the one in the earlier action and the parties to both actions are the same, *Diehl v. Commonwealth of Pennsylvania, Department of Public Welfare*, 88 Pa.Commonwealth Ct. 404, 489 A.2d 988 (1985), collateral estoppel does not apply where the issue decided in the earlier proceeding was not material or necessary to adjudicate the cause of action. In *Thal v. Krawitz*, 365 Pa. 110, 73 A.2d 376 (1950), the Pennsylvania Supreme Court, quoting section 68 of the Restatement, Judgments, recognized that preclusion doctrines apply only where the facts or issues settled in the earlier action are essential to the first judgment. *See also Moore v. United States*, 235 F.Supp. 387 (W.D.Va.1964).

Thus we must consider (1) whether the board's determination that the landowner's lots are legally nonconforming was necessary to its adjudication of the landowner's duplex request and (2) if that determination was an element necessary for the adjudication of that duplex request, whether the resolution of the issue should preclude relitigation of the issue with regard to the remaining property that was not the subject of the earlier action.

In the duplex case, the board was asked to determine whether a hardship prevented the landowner from developing lots 1,2,6 and 7, as indicated in Appendix B, in conformity with the ordinance. As indicated in our review of that case, the

board concluded that no hardship existed with regard to those lots because they were valid nonconforming lots upon which the landowner could develop single-family dwellings.

Because the board was required to determine that the lots were legally nonconforming in order to negate the need for a variance for single-family dwelling development (as distinguished from duplex development), the nonconformance issue was thus necessary to the board's adjudication. Therefore, the doctrine of collateral estoppel applies with respect to those specific lots. However, because the only cause of action before the board in that duplex case was the landowner's request for variances for lots 1,2,6 and 7, there was no need for the board to consider whether the remaining lots were legal nonconforming lots. Therefore, this court is not precluded from considering the issue with regard to the landowner's remaining property.

### 4. Nonconforming Status of the Remaining Lots

At the time the landowner acquired his property in 1986, section 1610.03(B) of the ordinance provided:

> NON–CONFORMING LOTS: A building may be constructed on any lot which was lawful when created and which *prior to the effective date of this ordinance was in separate ownership* duly recorded by plan or deed, provided the yard requirements of this ordinance are observed. (Emphasis added.)

The provision clearly indicates that landowners may only develop nonconforming lots that were in separate ownership, i.e., from abutting lots, at the time the ordinance was adopted. The question of whether the landowner intended to subdivide his property in a manner that satisfied the requirements of the earlier ordinance is irrelevant because the landowner has not established that the lots were in separate ownership at the time the ordinance was adopted. The parties' reliance on the doctrine of merger is misplaced, because the language of the ordinance is clear and controls.

The township repealed that section of the ordinance in 1989, see Amendment 89–9, and replaced the former definition of nonconforming lot, which provided as follows,

NON–CONFORMING LOT

> A lawfully created lot of record existing at the passage of this Ordinance, or subsequent zoning changes, which does not comply with all requirements of this Ordinance for the district in which it is located.

with the following definition:

> "NONCONFORMING LOT"—A lot the area or dimension of which was lawful prior to the adoption or amendment of a Zoning Ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption or amendment.

The landowner argues that, under the new definition, his lots are nonconforming. However, the earlier provisions of the ordinance control. As indicated above, when the landowner acquired his land in 1986, section 1610.03(B) was in effect. Under the operation of that provision, a landowner is permitted only to develop on nonconforming lots that were in separate ownership at the time the ordinance was adopted. There is no evidence in the record that, at the time of the ordinance was adopted, the lots were in separate ownership. Under the landowner's interpretation of the ordinance provisions, he could assert that he has a right to develop each smaller individual lot that formerly comprised the University Heights subdivision.

 Also, even assuming that the new definition of nonconforming lot is controlling, the landowner has directed this court to no authority, such as the former grandfathering provision found at section 1610.03(B), quoted above, which permits the development of nonconforming lots under the terms of the former provisions of the ordinance. Section 1610.03(B) permitted the development of nonconforming lots if the lots were in separate ownership before the enactment of the provision. As indicated above, the landowner has not established a right under the former provision. The present

ordinance contains no grandfather clause. The definition of nonconforming lot does nothing more than define that term— it does not establish any substantive right on the part of the landowner to develop his land. Hence, this court concludes that the landowner has not established that his remaining lots are nonconforming lots under the ordinance or that he is entitled to construct single-family dwellings on lots that are smaller than the presently applicable requirement of 12,000 square feet.

## ORDER

NOW, April 8, 1993, the order of the Court of Common Pleas of Northampton County, dated April 15, 1992, at No. 1991–C–308, denying the landowner's request for a variance is reversed on the ground that the landowner is permitted to construct duplexes on his lots as a matter of right. The order of the Court of Common Pleas, dated April 14, 1992 at No. 1991–C–3220, is affirmed as to the trial court's conclusion that lots 3,2,5,6 and 7, as indicated on Appendix B, are valid nonconforming lots and as to the satisfaction of the ordinance's dimensional requirements with regard to lot 5. The trial court's decision is reversed regarding its conclusion that collateral estoppel precluded review of the issue of whether the landowner's remaining property constitute valid nonconforming lots.

Accordingly, the trial court's decision in the objector's permit appeal case is affirmed in all respects with regard to lot 5. The determination that lots 1, 2, 6 and 7, as indicated in Appendix B, are legally nonconforming is affirmed. However, we reverse the board's conclusion that the remaining lots are legally nonconforming. The trial court's decision in the landowner's appeal in the variance request case, affirming the board's denial of variances for the construction of duplexes on lots 1, 2, 6 and 7, is reversed.

## APPENDIX A