**CITY OF JOHNSTON, Appellee,**

v.

**Andrew CHRISTENSON, Appellant.**

No. 04–0208.

Supreme Court of Iowa.

March 31, 2006.

Rehearing Denied July 5, 2006.

Frank Murray Smith of Frank Murray Smith Law Offices, Des Moines, for appellant.

J. Russell Hixson of Hixson, Brown & Parrish–Sams, P.C., Clive, for appellee.

CADY, Justice.

This appeal requires us to consider the doctrine of issue preclusion as it applies to a decision of a board of adjustment to grant a variance and special exception from a city zoning ordinance to a landowner for the construction of an accessory building. In doing so, we must clarify the proper allocation of power between a city and its board of adjustment, as well as the proper procedure for a city to challenge a decision by its board of adjustment. The matters at the center of this dispute arose in the course of an action for a declaratory judgment in which the district court declared that the board of adjustment never decided if the proposed use of the structure in dispute was legal under the ordinance when it granted the special exception and variance. This ruling paved the way for the city to assert the use of the structure as grounds to deny approval of the site plan and the issuance of a building permit. We reverse and remand the decision of the district court.

## I. Background Facts and Proceedings.

Andrew Christenson owns 9.7 acres of land located along Merle Hay Road in the City of Johnston. It is an island of bygone days, encased within a progressive, vibrant, rapidly sprawling metropolitan suburb. The acreage was once part of a farm in a sea of other farms, and it retains many characteristics of its rural past today. At the time Christenson purchased the land, it included a single-family residential home, a detached garage, and five outbuildings. The residential dwelling was built in 1923. The outbuildings were built in the 1940s and 1950s, and included a small barn, a tack shed, a farrier shed, a grain shed, and an insulated shed. The garage was built in 1960. Much of the land was enclosed by a fence to retain farm animals.

The land is now in a mixed-use center district of the City zoned ROC–2. It is a relatively new zoning classification enacted in 2001 that includes a mixture of residential, office, and commercial uses. The land was zoned for commercial and office use, primarily dedicated to offices, prior to the current mixed-use zoning. It was originally zoned for residential use (R–2) shortly after the City was incorporated in 1969. The zoning was changed to commercial use in 1980. The land and the outbuildings had been used for agricultural purposes prior to the incorporation of the City and the enactment of the various zoning ordinances, and the property continued to be legally used for agricultural purposes as a preexisting nonconforming use since that time. The agricultural uses have primarily included planting crops and keeping horses. The land is currently used to pasture approximately four horses.

In 1998, a vicious, inclement storm hit the City. It severely damaged or destroyed the outbuildings on Christenson's land. The garage was damaged beyond repair. The farrier shed, grain shed, and barn were destroyed, and the cost of repairing the damage to the insulated shed and the tack shed far exceeded the replacement cost of the structures.

The current ROC–2 mixed-use zoning ordinance adopted in 2001 permits accessory structures, subject to certain size, bulk, and other restrictions. Johnston Municipal Code § 17.04.290.1. Under the ordinance, the size of accessory buildings on lots between five and ten acres is limited to 3600 square feet, unless a special exception is permitted by the board of adjustment based upon special findings. *Id.* The maximum height for accessory struc-

tures under the ordinance is fifteen feet. *Id.* § 17.04.290.1(E). Additionally, the ordinance sets forth the various principal and accessory uses permitted in an ROC–2 district, which do not include agricultural use. *See id.* § 17.10.182.40.

After the enactment of the ordinance, Christenson began to move forward with a plan to construct a large accessory building to replace the various functions of the damaged and destroyed outbuildings. The plans called for the construction of an 80 × 200–foot building (16,000 square feet) with a height of twenty-four feet. Under the plans, it would be built approximately 120 feet from the existing residence and would be used for storage of feed and supplies, personal property, vehicles, and horses.

Christenson filed an application with the board of adjustment under section 17.04.290.1(C) of the city ordinance for a special exception to exceed the maximum area limitation of 3600 square feet for accessory structures. He also requested a variance from the fifteen-foot height restriction.

A hearing on the application was held on December 20, 2001. The office of the city zoning administrator submitted a written report to the board prior to the hearing to assist the board in making its decision on the application for a variance and special exception. The report identified the essential facts relevant to the special findings required under the ordinance for a special exception.[1] A portion of these facts informed the board that the intended use of the structure for horses justified the need for additional space, but the zoning administrator expressed an opinion that the construction of the structure, while technically permissible, could conflict with the purpose of the nonconforming-use ordinance. Following the hearing, the board passed a resolution. The resolution approved the special exception for area and granted a variance for height. The board of adjustment made five written findings contained in five numbered paragraphs of the resolution. It found:

1. The building size was "appropriate for the intended use as storage for equipment and an exercise area for horses."

2. Notice should be recorded to limit the present and future use of the building to permitted uses under the ordinance because the building could be used for nonpermitted uses.

3. The siting of the building was appropriate.

4. Special architectural restrictions were needed so the building would blend into the surrounding area.

5. The variance for height was needed based on hardship of constructing a large building without a corresponding increase in the height of the roof.

The board also included a condition that required Christenson to submit a site plan

---

1. Section 17.04.290 permits a special exception to the area requirements for an accessory building based upon the following findings of fact:

 a. The need for additional floor area of accessory structure is demonstrated to the Board of Adjustment's satisfaction, and

 b. The additional floor area will not adversely affect the property value of the subject property or adjoining properties, and

 c. The siting (such as setbacks) of the proposed accessory structure minimizes any adverse effect upon adjacent properties, and

 d. Greater architectural restrictions than contained in paragraph D below [accessory structure building materials] have been employed as needed to assure compatibility with neighboring residential structures.

Johnston Municipal Code § 17.04.290(C)(1).

for approval by the planning and zoning commission and the city council.

Pursuant to the procedure under the ordinance, the city council requested that the board reconsider its resolution, based on an opinion by the city attorney that the intended use of the structure for horses was prohibited under numerous city ordinances as an illegal expansion of a nonconforming use. The opinion letter cited numerous specific ordinances that allegedly would be violated if the structure were used for horses, and it argued the board therefore erred when it granted Christenson's variance and special exception.

The board of adjustment then reconsidered the matter at a hearing on January 31, 2002. Following a discussion between board members and city officials concerning whether the erection of a new structure intended, in part, for a nonconforming use was prohibited under the ordinance, the board confirmed the prior resolution by vote. No written decision was entered.

The City filed a petition for a writ of certiorari with the district court to challenge the decision of the board of adjustment. Christenson then submitted a site plan for approval by the planning and zoning commission and the city council. The City refused to take action on the site plan and filed a petition for declaratory judgment in district court asking the court to declare that it was not obligated to approve the site plan because the plan submitted by Christenson revealed that the intended use of the structure violated several ordinances separate from the ordinance covered by the variance and special exception. First, the City claimed the use of the structure for horses was not a permitted use under section 17.10.182.40, which prescribes the permitted uses for accessory buildings. Second, it claimed the use of the structure for horses violated the nonconforming-use-of-land provisions

under section 17.04.150 and violated the nonconforming-use-of-structure provisions of section 17.04.160. More specifically, the City claimed the plan violated section 17.04.160(G), which does not permit structures used for a nonconforming use to be rebuilt after damage in excess of fifty percent of the replacement cost. These sections were included in the written opinion by the city attorney submitted to the board of adjustment prior to the second hearing.

The City claimed it was authorized to reject the site plan based on the additional ordinances because the board of adjustment did not address or decide if the project violated the additional ordinances but only granted the special exception and variance from the area and height requirements of section 17.04.290.

The district court stayed the writ of certiorari action and considered the petition for declaratory judgment based on motions for summary judgment filed by the parties. The motion filed by the City asked the district court to declare that the proposal violated other ordinances not used by the board of adjustment to grant the variance and special exception. The district court declared the proposed structure, despite the special exception and variance for size and height granted by the board of adjustment, violated section 17.10.182.40, and 17.04.160, and these ordinances were not considered by the board of adjustment.

Christenson appealed. He did not challenge the findings by the district court that the project violated section 17.10.182.40 and 17.04.160 of the city ordinance, but claimed the board of adjustment previously decided the matter adversely to the City when the board passed the resolution to

grant the special exception and variance, and the doctrine of issue preclusion precluded the City from raising the issues again in the exercise of its authority to approve the site plan. Christenson claims the only remedy for the City was to file a writ of certiorari from the action by the board of adjustment.

## II. Standard of Review

We review a ruling on a motion for summary judgment for correction of errors at law. *Christy v. Miulli,* 692 N.W.2d 694, 699 (Iowa 2005) (citing *Schlote v. Dawson,* 676 N.W.2d 187, 188 (Iowa 2004)). Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

## III. Declaratory Judgment

We first address the claim by Christenson that the City was barred from challenging the decision of the board of adjustment by means of a declaratory judgment after the City filed a writ of certiorari from the board decision. He argues that the identity of the issues precludes two separate actions and requires the City to pursue relief only by way of writ of certiorari.

Under Iowa Code section 414.15, a person claiming a decision by the board of adjustment is illegal may seek relief from that decision by filing a writ of certiorari. Iowa Code § 414.15 (2001). As a general rule of law, "a party [who] has a statutory right of appeal from a decision of an administrative agency, . . . may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." 22A Am. Jur.2d *Declaratory Judgment* § 76, at 667 (2003); *accord* 26 C.J.S. *Declaratory Judgment* § 21, at 64 (2001) ("An action for a declaratory judgment may not be utilized for the purpose of retrying matters previously adjudicated or as a substitute for an appeal."). We follow this general rule of exclusive remedies, but recognize an exception. We will permit a declaratory judgment as a claim for relief from an action of an administrative board as a companion or alternative claim to a statutory certiorari action if: (1) the statutory remedy of certiorari will not afford complete relief, and (2) the legislature did not intend certiorari to be the exclusive remedy. *Fox v. Polk County Bd. of Supervisors,* 569 N.W.2d 503, 508 (Iowa 1997) (allowing simultaneous declaratory-judgment and writ-of-certiorari actions because the declaratory-judgment action raised an additional issue, not addressed in the certiorari action, of whether rezoning violated the Takings Clause, and because certiorari was not intended to be exclusive).[2] Thus, if the declaratory-judgment action tests the constitutionality of a zoning ordinance, or some other issue outside the action of a board of adjustment, both the petition for writ of certiorari and declaratory judgment petition may be pursued as remedies from a decision of the board of adjustment. *Id.* Otherwise, a declaratory judgment may not be used as a remedy from a decision by the board of adjustment. *See*

**2.** In *Fox,* we stated: "The existence of another remedy which will afford complete relief does not preclude a judgment for declaratory relief in cases where it is appropriate; the test is whether the legislature has prescribed an exclusive remedy." *Fox,* 569 N.W.2d at 508.

We further stated: "Although certiorari is an appropriate means to review of board of supervisors' zoning decision, it is not an exclusive remedy." *Id.* (citing *City of Grimes v. Polk County Bd. of Supervisors,* 495 N.W.2d 751, 752 (Iowa 1993)).

101A C.J.S. *Zoning and Land Planning* § 353, at 483–84 (2005) ("While a declaratory judgment action may be properly brought to test the *validity or constitutionality* of a zoning authority which is *legislative* in nature, such an action ordinarily is not an appropriate method for judicial review of *administrative* decisions. Accordingly, although a denial of an application for a permit may be reviewed in an action for declaratory relief where the constitutionality of the zoning ordinance is being tested, *a declaratory judgment generally may not be sought to review the decision of an administrative agent, refusing to issue a permit, where the validity of a zoning ordinance is not being attacked.*" (Emphasis added.)); *Rich Mfg. Co. v. Petty*, 241 Iowa 840, 847, 42 N.W.2d 80, 84 (1950) ("While the existence of another remedy does not preclude a court from granting declaratory relief, the relief must be denied in a case where there is a complete remedy otherwise provided by law and intended to be exclusive." (Citations omitted.)).

■ We observe that the grounds ultimately presented by the City to the board of adjustment at the reconsideration hearing to support denial of Christenson's application for an exception and variance are essentially the same grounds advanced by the City to justify the denial of Christenson's site plan in the declaratory-judgment action. Thus, this identity of grounds reveals that complete relief will be available to the City in the certiorari action. Of course, under the exclusivity-of-remedies rule, a declaratory judgment can only be brought when the certiorari action will not afford complete relief.

However, the exclusivity-of-remedies doctrine does not apply to the declaratory-judgment action in this case because the City was not pursuing declaratory relief as a remedy from the action taken by the board of adjustment, but as a means to determine its separate obligation to exercise its site-plan authority in response to Christenson's request for approval. Thus, the issues in the two actions may be identical, but the one seeks to remedy an alleged wrong, and the other seeks guidance in performing a separate function. We therefore proceed to determine if another legal doctrine, issue preclusion, precludes declaratory relief.

## IV. Application of Issue Preclusion to the Board of Adjustment Decision

The City sought a declaratory judgment to declare Christenson's rights to obtain approval of his site plan. The petition filed by the City asked the court to decide if the proposal violated the permitted-use and nonconforming-use ordinances. The doctrine of issue preclusion is implicated because Christenson claims the issues of permitted and nonconforming uses were the same issues raised and decided in the board of adjustment action.

■ Issue preclusion, or direct or collateral estoppel, " 'means simply that when an issue . . . has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *State v. Seager*, 571 N.W.2d 204, 208 (Iowa 1997) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970)). In order for the prior determination to have preclusive effect in subsequent litigation, four elements must be met. These prerequisites are:

"(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action

must have been necessary and essential to the resulting judgment."

*Comes v. Microsoft Corp.*, 709 N.W.2d 114, 118 (Iowa 2006) (quoting *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)). Furthermore, an administrative adjudication by an entity such as the board of adjustment can have a preclusive effect in a judicial proceeding. *See Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 398 (Iowa 1988) ("[I]ssue preclusion may arise through meaningful administrative proceedings...."); *Waylonis v. Baum*, 281 A.D.2d 636, 723 N.Y.S.2d 55, 57 (2001) ("It is well-settled that the doctrine of res judicata applies to the quasi-judicial determinations of administrative agencies, including municipal zoning boards." (Citations omitted.)). There are several requirements that must be met for an agency determination to have preclusive effect in a judicial proceeding.[3] However, the parties do not dispute that a decision by the board of adjustment can have preclusive effect. The question is whether the preclusive effect results under the circumstances of this case.

It is helpful to first review the function of the board of adjustment and the authority of the City to review site plans in determining if the identity-of-issues element was satisfied in this case. Under the general statutory scheme of city zoning in this State, the power to grant variances and exceptions is exercised solely by the board of adjustment. Iowa Code § 414.7. Under the Johnston zoning ordinance, which is consistent with the prevailing view, the board of adjustment is authorized to overlook the strict letter of the ordinance and grant a variance under certain conditions to avoid undue hardship to a property owner, so long as the overall scheme and purpose of the ordinance is not offended. Johnston Municipal Code § 17.04.210(E)(2). Additionally, the board of adjustment is authorized to grant exceptions. *Id.* § 17.04.210(E)(3). This can be done by general authorization under section 17.04.210, *see id.* § 17.04.210(E)(3)(a) (allowing the Board to grant an exception to the zoning district regulations to permit the erection of a building and use of premises "which the Board determines is rea-

3. We have explained:

We have held that agency action may be adjudicatory if the agency determines an individual's rights, duties, and obligations created by past transactions or occurrences. *See Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 277 (Iowa 1983). The Restatement provides this, in part, with respect to the preclusive effects to be given to agency determinations:

2. An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:

a. Adequate notice to persons who are to be bound by the adjudication ...;

b. The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

c. A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

d. A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

e. Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

Restatement (Second) of Judgments § 83 (1982). *Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 397–98 (Iowa 1988).

sonably necessary for the public convenience or welfare"), or by some specific authorization under a specific ordinance, *see, e.g., id.* § 17.04.290.1(C) (stating maximum accessory building area "may be modified by the Board of Adjustment as a Special Exception"). Furthermore, the board is permitted to grant special use permits. *See id.* § 17.90.000(B) (allowing the Board to issue special use permits to allow certain unique uses of land, such as orchards, windmills, telecommunications towers, and driving ranges).

The zoning ordinance in this case also provides for the submission of site plans of proposed uses and development of land to the city council after review by the planning and zoning commission. *See id.* § 17.80.020. We have previously recognized that this process allows the city to exercise oversight and control over the development of land through the enforcement of a city zoning code. *Kane v. City Council,* 537 N.W.2d 718, 722 (Iowa 1995). The site-plan process requires the submission of a map of the development and other information relating to the development. Johnston Municipal Code § 17.80.040. This information permits the City to make certain that the plan complies with all the zoning regulations, other

city codes and regulations, and aesthetic and practical concerns, such as lighting, landscaping, and traffic considerations. *Id.* The site plan is approved if the requirements of the ordinance and regulations are met. *See id.* § 17.80.020(F) (stating city council may either approve or disapprove the site plan); *cf. Van Vactor Farms, Inc. v. Marshall County Plan Comm'n,* 793 N.E.2d 1136, 1144 (Ind.Ct. App.2003) ("A plan commission's only task when reviewing an application for preliminary plat approval is to determine whether the proposed plat complies with the concrete standards set forth in the subdivision control ordinance, and the commission cannot deny an application on the basis of factors outside the ordinance." (Citation omitted.)). On the other hand, the process contemplates that use and zoning issues that arise from the face of a site plan be resolved before the city is required to approve the plan. *See Bell Atl. Mobile Sys., Inc. v. Zoning Hearing Bd.,* 676 A.2d 1255, 1263 (Pa.Commw.Ct.1996).

It is clear that Christenson sought a special exception under the special conditions set out in section 17.04.290.1(C) of the ordinance, and an area variance under the general variance powers of the board of adjustment.[4] Christenson's request was

---

**4.** Although most zoning ordinances, including those in this case, make no mention of the types of variances, courts have traditionally developed a distinction between "use variances" and "area variances" for the purpose of recognizing and imposing different standards for granting each type of variance. 3 Kenneth H. Young, *Anderson's American Law of Zoning* § 20.02, at 424 (4th ed.1996) [hereinafter Young]. A use variance permits a use of land for purposes other than those prescribed by the zoning ordinance, and is based on the standard of unnecessary hardship. *Id.* at 425; *accord* 101A C.J.S. *Zoning and Land Planning* § 297, at 281. An area variance does not involve a use prohibited by an ordinance, but concerns a deviation from specific requirements such as height limitations, set-

back lines, size regulations, and the like. 3 Young § 20.07, at 426–27; 101A C.J.S. *Zoning and Land Planning* § 297, at 281. An "area variance" is normally unrelated to a change in use and traditionally justifies a slightly lesser showing than required to justify a "use variance." 3 Young § 20.48, at 580–81; 101A C.J.S. *Zoning and Land Planning* § 297, at 381. Additionally, the distinction between a use variance and an area variance reveals that an area variance is more aligned with an exception since it does not impose an incompatible use on adjacent land or disrupt the character of a neighborhood with a different use. 3 Young § 20.48, at 580–81; 101A C.J.S., *Zoning and Land Planning* § 297, at 381.

not made under section 17.04.210(E)(3) of the ordinance governing the general powers of the board of adjustment to permit exceptions to district regulations, and Christenson made no request for a special use permit under chapter 17.90 of the ordinance. Instead, the city ordinance permitted accessory buildings in the zoning area, and Christenson's application revealed that he sought a special exception to erect an accessory building larger than permitted under the ordinance and an area variance to make the building taller than permitted under the ordinance. Thus, the application submitted by Christenson did not seek a change in any use restrictions under the ordinance. He simply wanted to build an accessory building bigger than permitted under the ordinance.

Similarly, the city zoning administrator initially viewed the application as a special exception and area variance. However, after the board granted the application, the City asked the board to reconsider its decision based on its position that an exception or variance could not be granted because the use of an accessory building, of any size, for horses was not permitted under the zoning ordinance. *See* Iowa Code § 414.7 (stating the city "council may remand a decision to grant a variance to the board of adjustment for further study"). The city attorney argued to the board of adjustment that the effect of the application was not merely to vary from the height and area restrictions of the ordinance, but also the use restrictions. Thus, at this point in the proceedings, the City claimed that the exception and variance for size could not be granted without a variance for use.

The request for reconsideration by the City squarely injected the same issue before the board of adjustment as presented in this declaratory-judgment action. In both cases, the City argued that the intended use of the proposed structure for horses was prohibited by the zoning ordinance, and this contemplated use made the proposal impermissible. Thus, the fighting question is whether the board of adjustment decided this issue when it reaffirmed its prior resolution to grant the variance and special exception and whether it was material and necessary to its decision. *See* Restatement (Second) of Judgments § 27, at 250 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

■■■■ Unlike a use variance, which is premised on the illegality of the proposed use, *see* 8A Eugene McQuillin, *The Law of Municipal Corporations* § 25.273, at 458 (3d ed.2003), an area variance presumes the legality of the use that prompts the need for a variance from dimensional restrictions, *see* 83 Am.Jur.2d *Zoning and Planning* §§ 757, 807, at 634, 670 (2003). Generally, this assumption is not challenged, and the propriety of the contemplated use of property is not actually raised as an issue in the variance proceedings. When presented with an application for an area variance, a board of adjustment can normally presume the contemplated use is permitted, and consequently, a determination of the legality of the use is unnecessary and collateral to the board's primary function to determine the need for the variance. Thus, a decision granting or denying a variance would not normally imply a decision that the contemplated use is either prohibited or permitted.

■■■ However, when the proposed use is raised as an issue, the board of adjustment may find it necessary to decide the propriety of the contemplated use in performing its function to decide the necessity for a variance. *See Schoepple v. Lower*

*Saucon Twp. Zoning Hearing Bd.*, 154 Pa.Cmwlth. 658, 624 A.2d 699, 705–06 (1993) (holding the issue of use can be necessary to the adjudication by the board of adjustment of the underlying request for a variance when the issue is raised in the context of an issue the board of adjustment is required to decide). Thus, we must decide if Christenson's case falls within the circumstances that give rise to an adjudication of the issue of use, and, if so, whether the issue was actually decided and was a necessary matter for adjudication.

■■■■ The fundamental rationale of collateral estoppel or issue preclusion commands that the doctrine only be applied to matters that have been actually decided. 18 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 4420, at 505 (2d ed.2002) [hereinafter Wright & Miller]; *accord Iowa Sup.Ct. Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 876 (Iowa 1996) ("In deciding whether to apply issue preclusion in subsequent litigation, the *focus* is on what *issues* were actually decided in the prior litigation and what issues a party in subsequent litigation seeks to have precluded."). Prior litigation over an issue without a decision does not justify preclusion. 18 Wright & Miller § 4420, at 505. Of course, the party who claims the issue has been litigated and decided in a prior action has the burden of proving this contention. *In re Marriage of Van Veen*, 545 N.W.2d 263, 266 (Iowa 1996).

■■■■ The difficulty of deciding if the board of adjustment actually decided the issue of use in this case largely results from the absence of a written decision by the board following the reconsideration hearing. The board did, however, "affirm [its prior decision] exactly the way it was." The board's prior decision included the following finding: "Mr. Christenson has shown that the size of the structure is appropriate for the intended use as storage for equipment *and an exercise area for* horses." (Emphasis added.) In determining the actually-decided requirement of issue preclusion, an inference can be drawn that the requirement was met in those instances when the issue was necessary to support the result reached in the first action. 18 Wright & Miller § 4420, at 521. This inference, in turn, can also satisfy the "essential to the judgment" element of issue preclusion. *Id.* § 4421, at 545 (noting that the actually-decided principle and the necessity principle often overlap); *see* Restatement (Second) of Judgments § 27, at 250 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

In this case, the board of adjustment was asked to grant both an exception and area variance. Under the city ordinance governing the special exception, the Board was required to make a special finding that the "need" for the structure justified the extra area. Likewise, the variance for additional height required a finding of some form of hardship. Ultimately, the City claimed in the course of the proceedings before the board that the contemplated "need" did not justify an exception because the "need" was not permitted under the ordinance. Thus, use was clearly raised in the context of the issues the Board was mandated to decide in order to perform its role in granting or denying the exception and variance. To decide if the "need" for the structure justified the exception and variance, the Board necessarily had to decide if the use of the structure for horses was permitted under the ordinance as a continuation of a nonconforming use.

■■■■ We recognize a presumption of administrative regularity that accompanies

actions by a board of adjustment. *Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 887 (Iowa 1976). This presumption means the board followed the applicable requirements of the ordinance in taking its action and found facts necessary to support its decision. *Id.* It also means the board applied the required standards to reach its decision. *Id.* It does not mean the correct decision was reached, but this is not a requirement of issue preclusion. In this case, we must presume that after the City introduced the issue of the proposed use of Christenson's structure into the proceedings, the Board considered the applicable provisions of the zoning ordinance raised as grounds to deny the application and concluded—right or wrong (an issue we do not decide and leave to be determined in the certiorari action)—that the proposed use was permitted under the ordinance, and consequently could be considered by the board in determining the need for an oversized building. The important factor in reaching this conclusion is that the board expressly relied on the proposed use of the building as "an exercise area for horses" in determining Christenson had demonstrated a need for an oversized building. Once the City challenged the legality of this use, the board could have taken the action it did, to confirm the grant of the application following the request for reconsideration, only if it found the intended use of the structure for horses was not proscribed by the ordinance.

 Therefore, we conclude that the issue of whether Christenson's proposed use of the structure was permitted under the zoning ordinance was actually decided by the board of adjustment when it voted to reaffirm its decision to grant a special exception and variance, notwithstanding the City's vigorous argument that this action would allow an illegal expansion of a nonconforming use. Moreover, the same facts and circumstances that show the non-conforming use issue was raised and decided also show the determination of the issue was material and relevant, as well as essential and necessary to the final decision. *See* Restatement (Second) of Judgments § 27, at 250 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). Accordingly, the doctrine of issue preclusion applies to preclude the City from relitigating in the declaratory-judgment action whether Christenson's use of the property for horses was permitted under the zoning ordinance as a nonconforming use.

 The board of adjustment has a special and exclusive role in land-use development and is alone responsible to approve exceptions and variances to ordinances. This power cannot be usurped by the City in any manner, including the exercise of its site-plan authority. *See Holland v. City Council of Decorah*, 662 N.W.2d 681, 688 (Iowa 2003) (city council cannot bypass authority of a board of adjustment; to do so violates Iowa Code sections 414.17 and .12, fixing the jurisdiction of the board). The City too has an important role in making sure projects and proposals comply with all ordinances before issuing building permits. Thus, the grant of a variance or exception by the board of adjustment under one ordinance does not necessarily prevent the City from subsequently reviewing the proposal under its site-plan authority or its authority to issue building permits to determine if the proposal complies with other applicable ordinances. *See Monat v. County of Cook*, 322 Ill.App.3d 499, 255 Ill.Dec. 679, 750 N.E.2d 260, 266–67 (2001) (a variation granted by the zoning board of appeals does not prevent the commissioner of the department of buildings and zoning from reviewing the building permit application to determine if the building complies with *other* applicable

ordinances). On the other hand, the City cannot use its site-plan authority to circumvent or overrule a decision by the board of adjustment by rejecting a plan on a ground properly decided by the board of adjustment. Instead, the City must seek a writ of certiorari to the district court from the decision of the board of adjustment when the City disagrees with the decision made. Iowa Code § 414.15. Unless and until the court in the certiorari action corrects the board's action, the board's decision that the use of the structure for horses is permitted under the zoning ordinance is binding on the City under issue preclusion.[5]

## V. Conclusion

We conclude Christenson sustained his burden to establish the elements of issue

preclusion with respect to the issue of the legality of the proposed use of the accessory building at issue in this case as a matter of law. The board of adjustment decided the proposed use was legal, and this decision has preclusive effect and was binding on the district court. The district court erred in granting the City's motion for summary judgment. We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

### REVERSED AND REMANDED.

---

5. We previously noted that the district court stayed the petition for writ of certiorari pending the resolution of this proceeding. A primary issue raised in the certiorari proceeding, as disclosed by the record in this case, is whether the City filed its petition in a timely manner. Petitions for writ of certiorari must be filed within thirty days from the time of the board action. *See* Iowa Code § 414.15 ("Such petition shall be filed within thirty days after the filing of the decision in the office of the board."). The board granted the variance and special exception on December 20, 2001, and voted to reaffirm that decision on January 31, 2002, following the request for reconsideration filed by the City. The City filed its petition for writ of certiorari on February 4, 2002. Christenson claims the petition was untimely because the request for reconsideration sought by the City following the initial decision by the board of adjustment did not extend the time to file a petition. Although the ordinance permits the City to seek reconsideration, we note that Christenson's argument is self-defeating under estoppel principles. Clearly, Christenson succeeds in this declaratory-judgment action only because the board of adjustment decided the legality of the proposed use of the structure following the request by the City for the board to reconsider the issue in its request for reconsideration. If the City's reconsideration

request was a nullity because reconsideration was not authorized, then it would follow that the board's decision upon reconsideration also has no effect. The doctrine of judicial estoppel prevents Christenson from using the reconsideration decision in this case as a valid judgment to establish issue preclusion and then claim it is a nullity for the purposes of triggering the commencement of the time to file a petition for writ of certiorari. Christenson cannot have it both ways. *See Duder v. Shanks,* 689 N.W.2d 214, 220 (Iowa 2004) (" 'The doctrine of judicial estoppel "prohibits a person who successfully and unequivocally asserts a position in one proceeding from asserting an inconsistent position in another proceeding." ' " (Citation omitted.)); *see also State v. Duncan,* 710 N.W.2d 34, 43–44 (Iowa 2006) (stating court can raise judicial estoppel on its own motion).

We also observe that the summary judgment entered by the district court in this case granted additional relief in the form of a declaration that the prior nonconforming status of the land was eliminated, an issue not raised by Christenson on appeal or discussed by the parties in the appeal. We only decide appeals within the framework of the issues raised, and we leave it to the district court on remand to determine the viability of any portion of its judgment not challenged in this appeal.